Kim D. Cannon, WY Bar No. 5-1401
Cole L. Gustafson, WY Bar No. 7-6070
DAVIS & CANNON, LLP
40 South Main Street
P.O. Box 728
Sheridan, WY  82801
Telephone:  (307) 672-7491
Facsimile:   (307) 672-8955
cannon@davisandcannon.com
cole@davisandcannon.com

Michael P. Hatley (*pro hac vice* admission forthcoming)
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, WA 98101
Telephone:  (206) 467-1816
Facsimile:   (206) 624-5128
mhatley@mcnaul.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| DRIFTER ENTERTAINMENT, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>BLOCKCHAIN GAME PARTNERS, INC. d/b/a GALA GAMES, a Wyoming corporation,<br><br>    Defendant. | Civil Action No. _____ |

**COMPLAINT**

Plaintiff Drifter Entertainment, Inc. ("Drifter"), by and through its undersigned counsel, for its Complaint against Defendant Blockchain Game Partners, Inc., a/k/a Gala Games ("Gala"), states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action arising out of breach of a video game development agreement between Drifter—a small, independent game developer—and Gala—a blockchain-based game publisher.

2. Pursuant to the terms of the agreement between Drifter and Gala, Gala agreed to publish, distribute, promote, and fund the development of *Superior*, Drifter's newest game. Gala was required to fund development through a series of milestone payments upon the receipt of agreed-upon deliverables from Drifter. Specifically, the contract required Gala to pay Drifter a final milestone payment of $750,000 upon delivery of a console version of *Superior*.

3. Drifter delivered to Gala a console version of *Superior* as required by the contract.

4. Rather than paying Drifter the final $750,000 milestone payment and publishing the game as agreed, Gala breached the contract, refused to pay, failed to publish the console version of the game, and repudiated its obligations in a series of misrepresentations and bad-faith assertions.

## THE PARTIES

5. Drifter is a Delaware corporation with its principal place of business located in Seattle, Washington.

6. Upon information and belief, Gala is a Wyoming corporation with its principal place of business located in Sheridan, Wyoming.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. This Court has personal jurisdiction over Gala pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and Wyoming Statutes Annotated § 5-1-107 because Gala is incorporated in Wyoming, conducts business in Wyoming, and maintains its principal office in Wyoming.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(2) because (i) Gala resides in the District of Wyoming, and (ii) a substantial part of the events or omissions giving rise to Drifter's claims occurred in the District of Wyoming.

## GENERAL ALLEGATIONS

### Drifter Enters Into a Game Development Agreement with Gala

10. Drifter is a small, independent game development studio founded in 2016 that creates video games for a variety of platforms, including personal computers and gaming consoles.

11. In order to bring its games to market, Drifter typically partners with video game publishers, which fund, promote, publish, market, and distribute Drifter's games in exchange for a share of the resulting sales revenue.

12. On January 22, 2022, in order to develop its newest game, *Superior*, Drifter entered into one such development agreement (the "Definitive Agreement") with Gala, a blockchain-based game publisher and gaming platform. A copy of the Agreement is attached hereto as **Exhibit 1**.

13. On March 10, 2023, Drifter and Gala entered into an amendment (the "Amendment") to the Definitive Agreement. A copy of the Amendment is attached hereto as **Exhibit 2**.

14. Pursuant to the Definitive Agreement, as amended by the Amendment (the "Agreement"), Gala agreed to publish, distribute, promote, and fund the development of *Superior* on various gaming platforms in exchange for a share of revenue from sales of the game. *See* **Ex. 1** at page 1, ¶¶ 2.1, 5.1A, 7.1; **Ex. 2** ¶¶ 1.4 (amending ¶ 4.1), 1.8 (amending Ex. A).

15. Gala agreed to pay Drifter a total development budget of $9.5 million. Gala was to pay this sum in a series of advances (or "Milestone Payments") upon the receipt of certain "Deliverables" to be submitted by Drifter upon estimated "Milestone Payment Due Dates." *See* **Ex. 1** ¶¶ 3.2A, 5.2; **Ex. 2** ¶¶ 1.2 (amending ¶ 3.2), 1.4 (amending ¶ 5.1), 1.8 (amending Ex. A).

16. For example, the Agreement required Gala to pay Drifter a Milestone Payment of $1,000,000.00 upon receipt of the "Commercial Launch" Deliverable, with a Milestone Payment Due Date of fifteen days after the amendment effective date (*i.e.*, March 25, 2023). *See* **Ex. 2** ¶ 1.8. The Agreement defined this Deliverable to mean delivery by Drifter to Gala of "a version of the game that is content complete" and which "meet[s] or exceed[s] prevailing industry standards for software release candidates" (among other requirements). *Id.*

17. Similarly, the Agreement required Gala to pay Drifter a Milestone Payment of $750,000.00 upon receipt of the "Console Launch" Deliverable, with a Milestone Payment Due Date of June 1, 2023. *See* **Ex. 2** ¶ 1.8. The Agreement defined this Deliverable to mean delivery by Drifter to Gala of "a console version of [*Superior*] to be determined," which (i) must have "feature parity with the Steam[1] release" of *Superior*, (ii) need have "no Web 3 features," and (iii) must include "a Battle Pass system that can be used in the web2 and web3 version of [*Superior*]." *Id.*

18. The Agreement also allowed Gala to propose additional specifications (the "Specifications") for the Console Launch Deliverable, subject to the requirement that the parties agree to any such Specifications in advance of certain specified dates. For example, Section 3.2 allowed for "written specifications mutually agreed to by the parties in advance . . . no later than the Milestone Payment Due Date [*i.e.*, by June 1, 2023]." **Ex. 2** ¶ 1.2 (amending ¶ 3.2). Exhibit A provided

---

[1] Steam is a video game platform and storefront for personal computers.

that any additional specifications for the Console Launch Deliverable "[s]hall be provided by Gala in a separate agreement" and "shall be mutually agreed upon by both Parties in writing . . . within 30 days of [the] Amendment Effective Date [*i.e.*, by April 9, 2023]." **Ex. 2** ¶ 1.8 (amending Ex. A).

19. Section 3.2 of the Agreement allowed Gala to reject the Console Launch Deliverable if it did not meet any such agreed Specifications, so long as it did so within a certain period of time. Specifically, the Agreement provided that if Gala "reasonably determines that [the Console Launch Deliverable] do[es] not materially conform to the Specifications, then [Gala] will issue to [Drifter] a notice of rejection that describes the reasons for the rejection for failure to meet the previously determined written Specifications . . . as soon as reasonably practicable but not later than 10 Business Days following receipt of the [Console Launch Deliverable]." **Ex. 2** ¶ 1.2 (amending ¶ 3.2). Upon the receipt of the notice of rejection, Drifter would have thirty days to cure any alleged deficiency. *Id.*

20. In the event that no notice of acceptance or rejection was received within ten business days after the Console Launch Deliverable, the Agreement required Drifter to remind Gala by email to legal@gala.games. *Id.* The Agreement provided that if Gala failed to provide any notice of acceptance or rejection within five business days after receipt of such an email reminder, "the Deliverables in question shall be deemed accepted." *Id.*

<u>Drifter Complies with its Obligations under the Agreement</u>

21. When the parties signed the Amendment on March 10, 2023, Drifter had provided all Deliverables other than the final Console Launch Deliverable. *See* **Ex. 2** ¶ 1.2 (amending ¶ 3.2). By the end of that month, Gala had made all associated Milestone Payments.

22. After signing the Amendment, Drifter confirmed with Gala that the Console Launch Deliverable would be developed for the Microsoft Xbox gaming console, with a target launch date of August 22, 2023.

23. Gala provided no Specifications for the Console Launch Deliverable (beyond the limited requirements listed in the Agreement, *i.e.*, feature parity with the Steam release, "no Web 3 features," and a "battle pass" system), neither by the April 9, 2023 deadline required by Amendment A of the Agreement, nor by the June 1, 2023 deadline required by Section 3.2 of the Agreement, nor at any other time. *See* **Ex. 2** ¶¶ 1.2 (amending ¶ 3.2); ¶ 1.8 (amending Ex. A).

24. On or about July 10, 2023, Drifter submitted the Console Launch Deliverable to Gala for evaluation. Drifter also sent Gala its invoice for the remaining Milestone Payment of $750,000.

25. The Console Launch Deliverable met all of the requirements contained in the Agreement. It is a fully playable version of *Superior* for the Xbox gaming console with features equivalent to those contained in the already-launched versions of *Superior* available on Steam and Gala's own platform. It implements a "battle pass" system (called Battlebook), which is available on both the Steam and Xbox versions and can be used in both web2 and web3 platforms. It contains no known material bugs or defects that would prevent a customer from purchasing or playing the game (nor has Gala ever identified any bugs or defects).

26. Gala did not provide any notice of rejection of the Console Launch Deliverable within ten business days of receipt, or at any other time. (Nor could Gala reject the Console Launch Deliverable for failing to "materially conform to the Specifications" where it provided no such Specifications in the first place.) *See* **Ex. 2** ¶ 1.2 (amending ¶ 3.2).

27. In fact, upon information and belief, (i) Gala never even reviewed the Console Launch Deliverable in July or August 2023, (ii) did not begin engaging with Microsoft to obtain the Xbox development kits necessary to evaluate the Console Launch Deliverable until June 2023, and (iii) as late as September 1, 2023, had still not obtained the necessary Xbox development kits.

<u>Gala Breaches the Agreement and the Implied Covenant of Good Faith and Fair Dealing</u>

28. Despite receiving the Console Launch Deliverable, Gala has not paid Drifter the remaining Milestone Payment of $750,000, nor has it published, delivered, or promoted the console version of *Superior*.

29. On August 31, 2023, Drifter sent Gala a letter notifying it that Drifter's invoice for the final Milestone Payment was over forty days past due and that Gala is in material breach of the Agreement. Drifter sent the letter to the legal@gala.games email address, among other recipients.

30. On September 7, 2023, Gala sent a response letter (the "Response Letter"), in which it denied that it had materially breached the Agreement. Gala did not dispute that it had received the Console Launch Deliverable or that it had failed to make the associated $750,000 Milestone Payment. Instead, Gala claimed that, among other things: (i) Drifter's submission did not meet "the agreed specifications"; (ii) Gala had issued a written rejection notice under Section 3.2 of the Agreement, including "a comprehensive explanation" of the alleged deficiencies with Drifter's submission; and (iii) Drifter had materially breached the Agreement because it failed to correct the deficiencies Gala claimed were detailed in its purported rejection notice.

31. Each of Gala's assertions is patently false. Drifter delivered the Console Launch Deliverable in full compliance with the Agreement. Contrary to Gala's assertions, it provided no Specifications under Section 3.2 of the Agreement, it issued no rejection notice whatsoever, and,

upon information and belief, it did not review Drifter's submission at all because it failed to obtain the required Xbox development kits.

32. Upon information and belief, Gala has sent similarly pretextual letters to several other game developers whose agreements Gala has breached as part of a coordinated effort to avoid its obligations to its developers.

33. On September 11, 2023, Drifter sent Gala a letter disputing the allegations in the Response Letter (including Gala's claim that it had issued a notice of rejection of the Console Launch Deliverable) and demanding that Gala pay the remaining $750,000 Milestone Payment. This letter was sent to the legal@gala.games email address, among other recipients.

34. Gala failed to respond to Drifter's letter.

35. Drifter invested considerable amounts of time and resources towards the development of the console version of *Superior*. Not only has Gala failed to pay Drifter the $750,000 Milestone Payment it is owed under the Agreement, but by failing to publish, distribute, and market the game and by causing its release to be delayed indefinitely, Gala has prevented Drifter from earning its bargained-for share of the resulting sales revenue.

36. Drifter has been left with no choice but to initiate this action.

**FIRST CAUSE OF ACTION:
BREACH OF CONTRACT**

37. Plaintiff realleges the preceding allegations and incorporates them by reference.

38. Gala entered into a lawfully enforceable contract with Drifter, pursuant to which Gala agreed to pay Drifter a $750,000 Milestone Payment upon receipt of the Console Launch Deliverable and to publish, distribute, and market the console version of *Superior*.

39. Drifter performed its obligations under the contract, including delivery of the Console Launch Deliverable.

40. Gala breached the contract without justification by failing to timely pay Drifter the $750,000 Milestone Payment upon receipt of the Console Launch Deliverable and publish, distribute, and market the console version of *Superior*.

41. As a result of Gala's breaches of the contract, Drifter is entitled to damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION:
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

42. Plaintiff realleges the preceding allegations and incorporates them by reference.

43. Under Wyoming law, there is in every commercial contract an implied covenant of good faith and fair dealing that obligates the parties to act in accordance with their agreed common purpose and each other's justified expectations, and to refrain from acting in a manner that would injure the rights of the other party to receive the benefit of the agreement.

44. Gala, by its actions, breached the implied covenant of good faith and fair dealing, including by, *inter alia*: (i) failing to provide any written Specifications by the required dates; (ii) refusing to pay the $750,000 Milestone Payment upon receipt of the Console Launch Deliverable; (iii) failing to timely make the arrangements necessary to evaluate and publish the console version of *Superior*; (iv) failing to disclose that it was not actually capable of evaluating and publishing the game; (v) causing the game to miss the targeted launch date; and (vi) further repudiating its obligations with its Response Letter—which, as detailed above, contained numerous bad-faith assertions and misrepresentations.

45. As a direct and proximate result of Gala's breaches of the implied covenant of good faith and fair dealing, Drifter has been damaged in an amount to be proven at trial.

**PRAYER FOR RELIEF**

Based on the foregoing allegations, Drifter respectfully requests that this Court enter judgment for Drifter and against Gala as follows:

A. An award of damages in an amount to be proven at trial;

B. An award of pre-judgment and post-judgment interest as allowed by law;

C. An award of reasonable attorneys' fees and costs to the extent allowed by law or equity; and

D. For such other and further relief as the Court deems just and equitable.

Respectfully submitted this 10th day of October, 2023.

        DAVIS & CANNON, LLP

        By: /s/ Cole L. Gustafson
        Kim D. Cannon, WY Bar No. 5-1401
        Cole L. Gustafson, WY Bar No. 7-6070
        DAVIS & CANNON, LLP
        40 South Main Street
        P.O. Box 728
        Sheridan, WY 82801
        Telephone:  (307) 672-7491
        Facsimile:   (307) 672-8955
        cannon@davisandcannon.com
        cole@davisandcannon.com

        McNAUL EBEL NAWROT & HELGREN PLLC

        Michael P. Hatley
        (*Pro Hac Vice* application forthcoming)
        600 University Street, Suite 2700
        Seattle, WA 98101
        Telephone:  (206) 467-1816
        Facsimile:   (206) 624-5128
        mhatley@mcnaul.com

        *Attorneys for Plaintiff*