DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



## COVER PAGE

**Blockchain Game Partners, Inc. dba GALA GAMES ("GALA GAMES")**
> Address: 680 S Cache Street, Suite 100, Jackson WY 83001
> Email: legal@gala.games

**DRIFTER ENTERTAINMENT, INC. ("GAME COMPANY")**
> Address: 4056 9th Avenue NE, Seattle, WA 98105
> Email: ray@drifter.games

**Effective Date**: 1/22/2022

**BRANDED GAME:  SUPERIOR**

**TERM:** The Term begins on the Effective Date and, subject as expressly provided, continues:

(i)     on an exclusive license basis in respect of blockchain gaming and blockchain platforms, and all other gaming and platforms for three (3) years from Commercial Launch (as defined later in this Agreement) of the Branded Game (such not to be unreasonably delayed by either Party) ("Exclusive Game Platform Term"); and

(ii)     on a non-exclusive basis following expiry of the Exclusive Game Platform Term;

unless both parties mutually agree in writing to extend the Exclusive Game Platform Term at least thirty (30) days prior to the expiry thereof.

**RESTRICTION**:     GAME COMPANY shall not for thirty-six (36) months from Commercial Launch of the Branded Game (such not to be unreasonably delayed by either Party) announce, publicize, promote, advertise, publish, supply or make publicly available anywhere in the world any other version of the Branded Game for any platform other than the GALA GAMES Platform via GALA GAMES.

EXHIBIT

*tabbies®*

1



## DEFINITIVE AGREEMENT

This Definitive Agreement (the "Agreement") is entered into as of this January 22, 2022 (the "Effective Date"), by and between Blockchain Game Partners, Inc. dba GALA GAMES ("GALA GAMES"), a corporation organized and existing under the laws of the State of Wyoming, with its principal place of business located at 680 S Cache Street, Suite 100, Jackson WY 83001, and Drifter Entertainment, Inc. ("GAME COMPANY"), a corporation organized and existing under the laws of Washington, with its principal place of business located at 4056 9th Avenue NE, Seattle WA 98105.

WHEREAS, this Agreement is effective as of the Effective Date and contains the terms and conditions under which GAME COMPANY grants GALA GAMES the right to make available and act as publisher and distributer for Branded Game. Each of GALA GAMES and GAME COMPANY are sometimes referred to herein as "Party" and, collectively as "Parties".

WHEREAS, nothing in this Agreement shall restrict GALA GAMES from entering into other similar type Letters of Intent and Definitive Agreements with other game developers;

WHEREAS, nothing in this Agreement shall restrict GAME COMPANY from entering into other similar type Letters of Intent and Definitive Agreements with other publishers/distributers, with the exception of with regards to Branded Game to the extent that it is exclusively licensed hereunder during the Term;

NOW THEREFORE, in consideration of the mutual premises herein contained and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties agree as follows:

## TERMS AND CONDITIONS

These Terms and Conditions form a part of the Agreement between GALA GAMES and GAME COMPANY. The parties agree as follows:

## 1. DEFINITIONS

1.1 "Affiliate" means with respect to a specified entity, an entity that directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with, the specified entity. For purposes of this definition, the term "control" (including the terms "controlling", "controlled by" and "under common control with") means the possession, direct or indirect, of more than 50% of voting power, through ownership of voting securities, by contract or otherwise.

1.2 "Adjusted Game Net Revenue" means all income and revenue (whether in cash, hard currency, FIAT, cryptocurrency, virtual currency or other currencies) ("Income and Revenue") received, directly or indirectly, from or with respect to the Branded Game, including but not limited to, all revenue received, directly or indirectly, from or with respect to the sale of Game Virtual Items within the Branded Game or on the GALA GAMES Platform, further including but not limited to sales, subscription, micro-transaction, advertising, eSports, product placement and sponsorship income and revenue, net of (i) any taxes GALA GAMES is legally required to collect, withhold or pay with respect to such earned amount (except taxes on the recipient's net income); (ii) reimbursement of actual costs advanced to GAME COMPANY; (iii) bona fide and properly authorized refunds to customers; and (iv) during the Exclusive

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



Game Platform Term, direct third party costs associated with the hosting, marketing and advertising of the Branded Game by GALA GAMES.   For purposes of clarification, no salaries, consulting fees or general operational overheads of GALA GAMES related to game development, publishing, marketing, business administration, implementation or operation shall be deducted in calculating Adjusted Net Revenue except as provided at (iv) aforesaid.  Adjusted Game Net Revenue does not include any revenue from the sale of nodes by GALA GAMES to support the Branded Game.  For further clarification purposes, Adjusted Game Net Revenue does not include any revenue from sales received with respect to agreements with Licensors that do not directly reference or market GAME COMPANY IP or the Branded Game (for example a Vox series with a Licensor who licenses their IP to the Branded Game so long as the Vox series does not have utility in the Branded Game or use the GAME COMPANY IP or Branded Game for marketing purposes).

1.3 "Business Day" means any day other than a Saturday, Sunday or statutory holiday in the United States of America.

1.4 "Commercial Launch" means a version of the game that is content complete is made available by GAME COMPANY to GALA GAMES for availability to play by all GALA GAMES users (does not require the user to own a specific NFT to access the game).  This version should meet or exceed prevailing industry standards for software release candidates, and GALA GAMES or GAME COMPANY, as applicable, fully enables the monetization features and initiates more than a *de minimus* amount of public marketing support for the Branded Game.

1.5 "GALA GAMES Marks" means a word, name, symbol, device, design, or other designation, or a combination of the preceding items, used by or on behalf of GALA GAMES to identify or distinguish the Branded Game, GALA GAMES services, GALA GAMES entities, or the GALA GAMES Platform, including proprietary logos, designs, characters, phrases, titles, artwork, and other creative elements. GALA GAMES Mark does not include any Licensed IP.

1.6    "GALA GAMES Materials" has the meaning given to it at section 3.7 below;

1.7 "GALA GAMES Node Network" means a network of nodes providing support to the GALA GAMES Platform.

1.8 "GALA GAMES Platform" means the social networking, computer and mobile gaming distribution and monetization channels, and other platforms that are hosted, held, controlled, or operated by GALA GAMES or its Affiliates.

1.9 "GALA GAMES Platform Data" means any data or information that is submitted by an end user through the GALA GAMES Platform or otherwise collected by GALA GAMES as a result of an end user's access or use of the GALA GAMES Platform, including user name, password, profile, social graph data, any GALA GAMES ID, and email address.

1.10    "GALA GAMES Virtual Currency" means any virtual currency that is made available within the GALA GAMES Platform, but that may or may not be converted or exchanged for real goods or hard currency, such as GALA Tokens or any to be determined in-game tokens.

1.11 "GALA Token or GALA Tokens" are currently ERC-20 blockchain-based assets that run on the Ethereum Network.  Ownership of GALA Tokens do not represent ownership in GALA GAMES, nor does GALA GAMES have centralized control over GALA Tokens.  The original contract for the creation of GALA Tokens can be found at the following address:

a.   0x15D4c048F83bd7e37d49eA4C83a07267Ec4203dA.

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



1.12  "Gala Vault" means a reserve held and controlled by GALA GAMES that maintains a supply of all items for promotional purposes, giveaways, and as a sales buffer in the event of an oversell or technical error in the store.  GALA GAMES has the sole right, and independent control over any and all items within.

1.13  "GAME COMPANY IP" means the GAME COMPANY Marks and all other works of authorship or other material or information relating thereto owned, controlled, developed, licensable, or sublicensable by GAME COMPANY or its affiliates during the Term, including without limitation (in each case to the fullest extent that IP subsists): (a) text, video, visual displays, scripts, literary treatments, characters, character skills and abilities, character biographies and background stories, backgrounds, environments, rules and play patterns, and other elements visible to the user of the Branded Game or other product; (b) all sounds, sound effects, sound tracks, and other elements audible to the user of the Branded Game or other product; (c) all methods in which the user interacts with the characters, backgrounds, environments, or other elements of the Branded Game or other product; (d) the distinctive and particular elements of design, organization, presentation, "look and feel," layout, user interface, navigation, trade dress, and stylistic convention (including the digital implementations) within the Branded Game or other product and the total appearance and impression substantially formed by the combination, coordination and interaction of these elements; (e)source code and object code; (f) any other proprietary elements of the Branded Game; (g) client or "app" software that is installed on an end user's mobile device to enable the end user to play a Branded Game; (h) server software and databases; (i) manuals, specifications, user guides, Frequently-Asked-Questions, and other documentation; (j) any other material or information; (k) all derivative works of the GAME COMPANY IP made by or on behalf of GALA GAMES or its affiliates ("Branded Materials"); (l) all other Upgrades or modifications, improvements, or derivative works to any of the items listed in (a) through (k) including any such Upgrades or modifications, improvements, or derivative works produced hereunder.

1.14  "GAME COMPANY Marks" mean all trade marks, service marks, words, taglines, names, symbols, devices, designs, indicia of origin, short phrases, and short sayings, including titles, logos, product designs, product features, character names, nicknames, personas, sounds, place names, scenes, things, and events, as well as any translations, foreign language equivalents, and combinations, in each case owned by GAME COMPANY or its affiliates.

1.15  "GAME COMPANY Development Technology" means the underlying software and back end materials of GAME COMPANY which form part of the Branded Game and are of general use or applicability in computer and video games and not specific to the Branded Game.

1.16  "Game Data" means, except for the GALA GAMES Platform Data, GAME COMPANY Platform Data and Personal Data, ANY data and record that stores permanent and persistent information about the state of play in a Branded Game, including but not limited to data regarding teams, competitors, in-game achievements, Game Virtual Items, logs, and other data generated within any of the Licensed IP, submitted by an end user directly into a Branded Game, or otherwise generated or collected directly in a Branded Game.

1.17  "Game Virtual Currency" means any virtual currency or other denotation of value that is made available only for a Branded Game, which may be used by an end user to purchase Game Virtual Items.

1.18  "Game Virtual Items" means items, item sets, avatars, attributes, abilities, skills, skill levels, services, "VIP" status privileges, or other in-game consumables, features or functionality (whether representing an actual or fictional item) which may be acquired or used by an end user within a Branded



Game. In some instances, Game Virtual Items may be purchased using Game Virtual Currency. In Some Instances, Game Virtual Items may be purchased as Non-Fungible Tokens.

1.19 "Licensed IP" means the GAME COMPANY IP which GALA GAMES uses as incorporated into the Branded Game or otherwise uses in publishing, distributing, operating, marketing, advertising, promoting or exploiting the Branded Game, subject to GAME COMPANY's approval. For the avoidance of doubt, all Branded Materials shall be considered Licensed IP.

1.20 "Licensed Marks" means all elements of GAME COMPANY Marks which GALA GAMES uses as incorporated into the Branded Game or otherwise uses in publishing, distributing, operating, marketing, advertising, promoting or exploiting the Branded Game, subject to GAME COMPANY's approval.

1.21 "Marketing Materials" means such marketing, advertising and promotional materials as are reasonably required for the publishing, marketing promoting and distribution of the Branded Game;

1.22 "Non-Fungible Tokens" means cryptographic assets on blockchain with unique identification codes and metadata that distinguish them from each other.

1.23 "Personal Data" means any data or information that can be used, individually or together with other information, to identify, contact, or locate an end user, including a person's name, mailing address, email address, GALA GAMES ID or GAME COMPANY ID or similar account ID, telephone number, financial information, or government-issued identifier.

1.24 "Territory" means Worldwide;

1.25 "Term" has the meanings given to them on the Cover Page.

1.26 "Upgrade" means a modification of, addition to, or extension of the Branded Game or other product, correction, update, upgrade, patch, enhancement, extension, or new release, whether combined with the original game or product or distributed, marketed, or sold separately or sold under a different title.

1.27 Other Terms. Other capitalized terms used but not defined where they initially appear in these Terms and Conditions will have the meanings set forth on the Cover Page.


## 2. LICENSE

2.1 GAME COMPANY License Grant. Subject to the terms and conditions of this Agreement, GAME COMPANY hereby grants to GALA GAMES a non-exclusive (except as expressly provided herein, including but not limited to Section 7), non-transferable (except in accordance with Section 13.7), worldwide, perpetual, sublicensable license to use the Licensed IP to publish, operate, advertise, promote, market, and distribute the Branded Game on the GALA GAMES Platform and other mutually agreed-upon platforms, including on, but not limited to the GALA GAMES Node Network in the Territory. This license includes the rights in the Territory to: (a) publish, distribute, operate, and otherwise exploit the Branded Game (including Upgrades) on the GALA GAMES Platform or other mutually agreed-upon platform; (b) use any Licensed Marks associated with the Branded Game to market, advertise, promote, and otherwise exploit the Branded Game on the GALA GAMES Platform or other mutually agreed-upon platform, including in promotional and marketing materials, domain names and social media identifiers; and (c) use, reproduce, host, perform, display, transmit, broadcast, translate, adapt and otherwise make derivative works of the Licensed IP to be incorporated in the Branded Game. The rights and licenses

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



granted by GAME COMPANY in this Agreement are and shall be exclusive in respect of blockchain gaming and blockchain platforms throughout the Exclusive Game Platform Term. The rights and licenses granted by this Agreement shall be exclusive in respect of all other computer, video games and all other gaming platforms throughout the Exclusive Game Platform Term. Following expiry of the Term the rights and licenses granted by GAME COMPANY in this Agreement are and shall be non-exclusive unless agreed otherwise. Notwithstanding the foregoing in respect to the GAME COMPANY Development Technology the rights and licenses granted by GAME COMPANY in this Agreement are non-exclusive. Further the rights and licenses granted by this Agreement include any additional license rights set forth on the Cover Page. GAME COMPANY must not provide and GALA GAMES may not use the Licensed IP with any software or other materials that are subject to any third party licenses or restrictions (e.g., open source software licenses) that, when combined with the Licensed IP, would require GAME COMPANY to disclose, license, distribute or otherwise make all or any part of those Licensed IP (whether alone or with that software or other materials) available to any third party. This license shall survive any and all sale or conveyance under this Agreement, including a sale or conveyance under Section 6 of this Agreement, with specific reference to, but not limited to, any sale of Licensed IP, sale of GAME COMPANY, or otherwise. This license is binding upon, and inures to the benefit of, the parties and their respective successors and assigns. GAME COMPANY understands that it is the intent of GALA GAMES to decentralize the GALA GAMES Platform, and as such, it is the intent of the parties to ultimately move all or a portion of the hosting of Branded Game onto the GALA GAMES Node Network. The timing of this hosting move is to be determined solely at the discretion of GALA GAMES. Until such time, GAME COMPANY will remain responsible for hosting of Branded Game. Notwithstanding the foregoing, should the Exclusive Game Platform Term expire and no other agreements be entered into at that time, GAME COMPANY shall either (i) deliver the source code to Branded Game to GALA GAMES and anything else necessary for GALA GAMES to maintain the operation of the Branded Game on the GALA GAMES Platform (and any other platforms that the Branded Game is offered on); or (ii) cooperate with GALA GAMES in a good faith manner in order to ensure that users of the GALA GAMES Platform (and any other platforms that the Branded Game is operated on) maintain access to and ability to play the Branded Game.

2.1A <u>Non-Fungible Tokens.</u> Subject to the terms and conditions of this Agreement, GAME COMPANY agrees and hereby grants to GALA GAMES an exclusive, non-transferable (except in accordance with Section 13.7), worldwide, perpetual, sublicensable license in the Territory to use and display GAME COMPANY Branded Game Non-Fungible Tokens on the GALA GAMES Platform for so long as such GAME COMPANY Branded Game Non-Fungible Tokens are available for purchase and/or use on the GALA GAMES Platform, which becomes non-exclusive at the end of the Exclusive Game Platform Term. GAME COMPANY shall have no ability or authority to unilaterally revoke the license contained in this paragraph. This license (and any related Section 5 obligations) shall survive this Agreement. This license shall survive any and all sale under this Agreement, including a sale under Section 6 of this Agreement, with specific reference to, but not limited to, any sale of Licensed IP, sale of GAME COMPANY, or otherwise. This license is binding upon, and inures to the benefit of, the parties and their respective successors and assigns. This representation/license survives the termination of this Agreement.

2.2 <u>Attribution and Proprietary Rights Notices</u>. The Branded Game will include a reasonable attribution that identifies GALA GAMES as the licensee of the Licensed IP, and a reasonable attribution



that identifies GAME COMPANY as the licensor of the Branded Game and owner of the GAME
COMPANY IP.

2.3 <u>Timeframe.</u>  All timeframes for anticipated release of Branded Game are contained in Exhibit A.
GAME COMPANY shall use reasonable efforts to achieve such timeframes. In the event and to the
extent that any delay to such timeframes, or the performance of any obligation by GAME COMPANY,
under this Agreement is caused by GALA GAMES, the applicable timeline or due date for performance
and the applicable obligation shall be extended on a day for day basis.

## 3.    COOPERATION

3.1 <u>Personnel</u>. GAME COMPANY and GALA GAMES will each appoint a team of qualified
personnel to be responsible for fulfilling their respective obligations under this Agreement. GAME
COMPANY and GALA GAMES will ensure that their respective appointed teams will have the
necessary resources and capabilities to perform that party's respective obligations under this Agreement,
and that their respective appointed teams will perform their obligations in a professional manner,
consistent with best industry standards.

3.2 <u>Deliverables</u>. GAME COMPANY will deliver to GALA GAMES all deliverables materially in
accordance with the specifications as agreed between the Parties from time to time. If GALA GAMES
reasonably determines that any of the deliverables do not materially conform to the specifications, then
GALA GAMES will issue to GAME COMPANY a notice of rejection in accordance with Section 13.6 as
soon as reasonably practicable but not later than 10 working days following receipt of the applicable
candidate deliverables. Upon receiving a rejection notice from GALA GAMES that describes the reasons
for that rejection, GAME COMPANY will use commercially reasonable efforts to correct the rejected
deliverables and deliver those corrected deliverables for test and evaluation by GALA GAMES within a
period to be agreed upon by the parties. The test and evaluation procedures provided in this Section will
be repeated for the corrected deliverables until GAME COMPANY accepts those deliverables. GALA
GAMES shall not unreasonably withhold or delay acceptance of any deliverables. In the event that notice
of acceptance or rejection is not received within 10 working days following receipt of the applicable
candidate deliverables, GAME COMPANY may remind GALA GAMES by email to **legal@gala.games**
and in the event that notice of acceptance or rejection is not received within 5 working days following
such reminder the deliverables in question shall be deemed accepted. In addition, upon GALA GAMES's
request, GAME COMPANY will provide GALA GAMES with "master copies" of Licensed IP free of
charge.

3.2A <u>Delivery Dates and Milestones.</u>  GAME COMPANY will use reasonable due diligence and
endeavor to deliver to GALA GAMES the Branded Game no later than the delivery dates set forth under
Exhibit A.  GAME COMPANY and GALA GAMES acknowledge, however, that these delivery dates set
forth under Exhibit A and other payment milestones set forth under Exhibit A are estimates and are not
required delivery dates unless otherwise specified in this Agreement.

3.3 <u>Distribution</u>.

(a) <u>GALA GAMES</u>. GALA GAMES has the sole right to create, design, edit, manage, and
otherwise control the presentation of Branded Game on the GALA GAMES Platform and the GALA
GAMES Platform itself or other agreed-upon platforms. GALA GAMES may stop any end user or other



transaction, or take other actions to restrict access to or the availability of any Branded Game on the GALA GAMES Platform in the event that it determines that it is necessary or appropriate to do so.

(b) <u>Maintenance of IP</u>. (i) GAME COMPANY will maintain all rights to the Licensed IP necessary to grant the rights to GALA GAMES that are granted in this Agreement. (ii) GALA GAMES will maintain all rights to the Branded Game (other than the Licensed IP) and GALA GAMES Materials necessary to grant the rights to GAME COMPANY that are granted in this Agreement.

(c) <u>Non-Fungible Tokens.</u> GAME COMPANY understands and agrees that the GALA GAMES Platform is dependent and focuses on providing users with the ability to "own their own content" through the use of Non-Fungible Tokens. As such, GAME COMPANY understands that once Game Virtual Items are created and provided to the end user in the form of a Non-Fungible Tokens, GAME COMPANY cannot then remove said Game Virtual Item or render said Game Virtual Item useless from the Branded Game. Further GAME COMPANY agrees that in any upgrades, updates, or otherwise, GAME COMPANY will not de-buff, or reduce the desirability or effectiveness of any Game Virtual Item in the form of a Non-Fungible Token. GALA GAMES shall have the right to inspect any and all proposed changes to the Branded Game or Game Virtual Items contained in a Branded Game before implementation to ensure that Non-Fungible Tokens contained within the Branded Game are not de-buffed provided that GALA GAMES shall undertake any such inspection expediently and shall not unreasonably withhold or delay any approval, nor request any unreasonable changes or requirement, in respect of any such changes or additions to the Branded Game or Game Virtual Items or the use of Non-Fungible Tokens. If GALA GAMES reasonably determines that any proposed changes to the Branded Game or Game Virtual Items does not conform with this clause, at its discretion, GALA GAMES will issue to GAME COMPANY a notice of rejection in accordance with Section 13.6 as soon as reasonably practicable. Upon receiving a rejection notice from GALA GAMES that describes the reasons for that rejection, GAME COMPANY will use commercially reasonable efforts to correct the rejected deliverables and deliver those corrected deliverables for test and evaluation by GALA GAMES within a period to be agreed upon by the parties. The test and evaluation procedures provided in this Section will be repeated for the corrected deliverables until GALA GAMES accepts those deliverables. In the event that notice of acceptance or rejection is not received within 10 working days following receipt of a request for approval, GAME COMPANY may remind GALA GAMES by email to **legal@gala.games** and in the event that notice of acceptance or rejection is not received within 5 working days following such reminder, the applicable changes or additions to the Branded Game or Game Virtual Items or the use of Non-Fungible Tokens shall be deemed accepted. This representation survives the termination of this Agreement. This representation is binding upon, and inures to the benefit of, the parties and their respective successors and assigns. This representation shall survive any and all sale under this Agreement, including a sale under Section 6 of this Agreement, with specific reference to, but not limited to, any sale of Licensed IP, sale of GAME COMPANY, or otherwise.

3.4 <u>EULA</u>. GALA GAMES will prepare and maintain an end user license agreement ("<u>EULA</u>") for use of Branded Game by end users on the GALA GAMES Platform.

3.5 <u>Compliance</u>. (A) GAME COMPANY must ensure at all times that all Licensed IP and deliverables provided by GAME COMPANY comply with this Agreement and all reasonable applicable GALA GAMES policies that are communicated to GAME COMPANY on a timely basis. Distribution of

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



Branded Game by GALA GAMES, or any withdrawal of a Branded Game from the GALA GAMES Platform, does not relieve GAME COMPANY of its responsibilities to ensure the Licensed IP complies with this Agreement and to perform all of its other obligations under this subsection 3.5(A). (B) GALA GAMES must ensure at all times that the Branded Game (other than the Licensed IP) and GALA GAMES Materials comply with this Agreement and all applicable GAME COMPANY policies that are communicated to GALA GAMES. Distribution of Branded Game by GAME COMPANY, or any withdrawal of a Branded Game from GAME COMPANY channels, does not relieve GALA GAMES of its responsibilities under this subsection 3.5(B).

3.7 <u>License to GALA GAMES Materials</u>. GALA GAMES may provide GAME COMPANY with access to GALA GAMES technical documentation, software, and other materials ("<u>GALA GAMES Materials</u>"). For the avoidance of doubt, GALA GAMES Materials do not include the Branded Game or any Licensed IP. Subject to the provisions hereunder, GALA GAMES hereby grants GAME COMPANY a nonexclusive, nontransferable (except in accordance with Section 13.7), royalty-free license during the Term of this Agreement to use those GALA GAMES Materials only for the purpose of the design, development, integration, and testing of the Branded Game (and assisting GALA GAMES with such things to the extent that such is necessary or applicable) in order for Parties to distribute, host, operate, and otherwise exploit the Branded Game under this Agreement. The GALA GAMES Materials are GALA GAMES's Confidential Information. GAME COMPANY must not use the GALA GAMES Materials with any software or other materials that are subject to any third party licenses or restrictions (e.g., open source software licenses) that, when combined with the GALA GAMES Materials, would require GALA GAMES to disclose, license, distribute or otherwise make all or any part of those GALA GAMES Materials (whether alone or with that software or other materials) available to any third party.

3.8 <u>Infringement and Pirated Games</u>. In the event any third party makes available the Branded Game without permission, commits acts of infringement of any GAME COMPANY IP, produces or makes available a substantially similar game to the Branded Game or portions thereof, or violates or breaches the terms of any EULA that infringes or is likely to infringe the rights of either Party in the Branded Game, without authorization anywhere in the world during the Term, GALA GAMES or its Affiliates is/are entitled to take any and all legal actions reasonably determined by GALA GAMES (including but not limited to cease and desist, lawsuits, arbitrations, mediations, and issuance of take-down notice(s) to any relevant third party against that third party) at GALA GAMES's cost. GAME COMPANY further agrees to, following GALA GAMES or its affiliates' reasonable request, provide GALA GAMES or its affiliates with all necessary legal documents required under the laws and judicial practice in the relevant jurisdiction for GALA GAMES or its affiliates to take such legal actions, including but not limited to the relevant chain of title documents with respect to Licensed IP sufficient to support that GALA GAMES or its affiliates is entitled to take such legal actions in the jurisdiction. GAME COMPANY shall additionally be entitled to enforce its rights and take such actions as it deems appropriate on its own account, including in the event that GALA GAMES elects not to pursue such infringement or take legal actions itself. GALA GAMES shall have settlement authority for any legal actions under this article that it initiates.

3.9 <u>Customer Support</u>. GALA GAMES is responsible for providing customer support (if any) for Branded Game to end users on the GALA GAMES Platform.

3.10 <u>Responsibility for Costs</u>. Each party will be responsible for all costs and expenses incurred by it in connection with its performance of this Agreement, unless otherwise expressly provided in this Agreement.

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



## 4.   MARKETING AND PUBLISHING OBLIGATIONS AND RESTRICTIONS

4.1 <u>Marketing</u>.  GALA GAMES will have the sole right to determine the marketing, advertising, and promotion of the Branded Game on the GALA GAMES Platform and other agreed-upon platforms.  This includes, but is not limited to, all Non-Fungible Token presale and distribution, marketing and user acquisition.

4.2 <u>eSports.</u>  GALA GAMES may host, organize, manage, administer, and otherwise operate eSports events of the Branded Game with professional teams of end users ("eSports"), and may distribute, produce, broadcast, rebroadcast, transmit, publicly perform, publicly display, promote or otherwise exploit eSports broadcasting (including through television, cable, Internet, or other transmission).

## 5. PAYMENT; REPORTING; AUDIT

5.1 <u>Agreement as to Costs ("Development Budget")</u>.  GALA GAMES agrees to provide Eight Million ($8,000,000.00) USDC in the form of advances for the total Development Budget for the Branded Game combined upon the signing of this Agreement. The Development Budget will be recouped from Adjusted Game Net Revenues as specified in Section 5.1A.  The Development Budget will be provided in the proportions specified in Exhibit A.

5.1A <u>Recoupment of Initial Investment</u>.  GALA GAMES will retain the right to 100% of any and all Adjusted Game Net Revenue derived from the Branded Game until GALA GAMES has recouped all monies advanced under the Development Budget to GAME COMPANY.  Once GALA GAMES has recouped its entire amount advanced under the Development Budget, all Adjusted Game Net Revenue derived from the Branded Game shall be divided evenly in 50%/50% shares between GALA GAMES and GAME COMPANY, and any allowable successors and assigns, and shall be paid as specified under Section 5 of this Agreement.  GAME COMPANY's share of Adjusted Game Net Revenues shall be paid on the fifteenth (15th) day following the completion of the calendar month in which it is earned, and payment will be made by the electronic method specified on, and in accordance with the terms of this Agreement.

5.1B <u>Game Revenue Collection</u>.  GALA GAMES will collect and process all Income and Revenue received, directly or indirectly, from or with respect to the Branded Game, including but not limited to, all Income and Revenue received, directly or indirectly, from or with respect to the sale of Game Virtual Items within the Branded Game or on the GALA GAMES Platform.

5.1C <u>Distribution of Non-Fungible Tokens.</u>  Any and all Branded Game Virtual Items made available in the form of Non-Fungible Tokens, whether created by GALA GAMES, GAME COMPANY, their Affiliates, hired Independent Contractors, successors, assigns, or any other foreseeable individual or entity on behalf of or in place of GALA GAMES OR GAME COMPANY, shall be distributed in the following ways:

(a)  At least 80% shall be placed for sale on the GALA GAMES Platform at the reasonable discretion of GALA GAMES per Section 4;

(b)  10% shall be distributed to the Gala Vault to be used at the sole discretion of GALA GAMES, including but not limited to, for promotional purposes, giveaways, and as a sales buffer in the event of a technical error or oversell in any store on the GALA GAMES Platform.  The Parties understand that there may be no tangible profit or revenue earned as a direct result of such discretion

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



exercised by GALA GAMES.  In the event there is a tangible profit or revenue, Section 5.1A shall apply; and,

    (c)  Up to 10% shall be distributed to the GALA GAMES Node Network at the discretion of GALA GAMES.

Notwithstanding the forgoing, the Parties may, upon written agreement, agree to a distribution plan that differs from above.  By way of example, the Parties may decide to do a "limited time only" Branded Game Virtual Items sale for a specific NFT, with all being released for sale on the GALA GAMES PLATFORM for a period of time, and any unsold NFTs being subsequently burned thereafter.

5.2 <u>Payments and Reports</u>. GALA GAMES will pay, or (subject to mutual written agreement of the Parties) cause GALA GAMES's Local Operator to pay via electronic fund transfer to the GAME COMPANY account as provided by the GAME COMPANY at the time that any payment is due under this Agreement. Where possible, payment will be made by smart contract.  All payments, net of all applicable withholding income taxes if any, will be made in cryptocurrency as determined by GALA GAMES. If currency conversion is required, payment shall be based on the exchange rate as reasonably determined by the clearing bank or exchange or API with whom GALA GAMES routinely conducts its business.  GALA GAMES may choose, in its sole discretion, to pay GAME COMPANY using the same cryptocurrency in the same amounts received by GALA GAMES in a User's purchase (all revenue after the recoupment shall be calculated in the cryptocurrency received by GALA GAMES and not the USD value).  Should the GAME COMPANY require a currency conversion, GAME COMPANY shall be responsible for all exchange rates and fees and accepts the risk of price fluctuation during conversion.

5.3 <u>Taxes</u>. All payments by GALA GAMES to GAME COMPANY under this Agreement include all applicable taxes, and GAME COMPANY will be responsible for the payment of all withholding or income taxes owed in connection with this Agreement. GALA GAMES reserves the right to withhold only applicable withholding income taxes payable by GAME COMPANY from amounts due from GALA GAMES if required by applicable tax laws, and those amounts due, as reduced by GALA GAMES's withholdings, will constitute full payment to GAME COMPANY. GALA GAMES will furnish to GAME COMPANY the original receipts or other government certifications evidencing all taxes withheld from such payment promptly after such receipts are available.

5.4 <u>Audit</u>. For so long as GALA GAMES publishes, distributes, and operates Branded Game, GALA GAMES will keep records regarding the publication, distribution, and operation of the Branded Game. GAME COMPANY may, no more than once each calendar year, upon 30 calendar days' prior notice, during the regular business hours of GALA GAMES on a mutually agreeable date, have a mutually agreed independent accountant from one of the top four international accounting firms (the "<u>Auditor</u>") conduct an audit of such records for the sole purpose of verifying that the payments made to GAME COMPANY conform to GALA GAMES's obligations under this Agreement. GAME COMPANY will be solely responsible for all costs and expenses of conducting the audit except in the event that such audit reveals that there is a shortfall in the amounts paid to GAME COMPANY, in which case GALA GAMES shall be reimburse GAME COMPANY for its reasonable costs. The Auditor will be required to sign a confidentiality agreement with respect to the records being examined. GAME COMPANY acknowledges that GALA GAMES's records and the reports and results of any audit contain the Confidential Information of GALA GAMES, and are subject to the terms and conditions of Section 8 of this Agreement. Any undisputed underpayment will be paid by GALA GAMES. Any overpayment will be credited towards GALA GAMES's next payment to GAME COMPANY.

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



## 6.   DATA; OWNERSHIP

6.1 <u>Data</u>. GAME COMPANY will not directly or indirectly access or collect any Game Data, Personal Data, or any other data from GALA GAMES's operation of any Branded Game on the GALA GAMES Platform or from any end user of any Branded Game on the GALA GAMES Platform ("Operational Data") except if and to the extent agreed with GALA GAMES, such agreement not to be unreasonably withheld or delayed where such Game Data is reasonably required to optimize the development and operation of the Branded Game. Each party will comply with all applicable laws and its policies regarding any data, including Personal Data, that such party obtains in connection with this Agreement. The Parties will discuss acting reasonably and in good faith with a view to agreeing terms on which Operational Data may be shared by the parties in order to benefit the development, operation and publishing of the Branded Game.

6.2 <u>GAME COMPANY Ownership</u>. As between GAME COMPANY and its affiliates and GALA GAMES, GAME COMPANY and its affiliates own all intellectual property and proprietary rights in and to all GAME COMPANY IP (including the Licensed IP). GAME COMPANY and its affiliates own and reserve all right, title, goodwill and interest in and to the Licensed IP subject to the licenses granted in Section 2.1.  GAME COMPANY, and its affiliates further own: (a) the Branded Game, all source code of the Branded Game, the Game Titles, the Game Virtual Items, any game-play mechanics, meta and balance of the Branded Game (including without limitation all resources, buffs, skills and abilities available to characters and players of the Branded Game).

6.2(A) <u>Right of First Refusal.</u>  Should at any time GAME COMPANY, and/or its affiliates, wish to sell the title rights or the any of the referenced ownership rights in 6.2 of this Agreement or undergo a "Sale of the Company"[1], it is agreed that GAME COMPANY shall offer GALA GAMES the exclusive and irrevocable first right of refusal to purchase same.  This right of first refusal or first option to purchase may only be exercised by GALA GAMES within fifteen (15) days from notification by GAME COMPANY that it desires to sell and that it has received a bona fide written offer, and GALA GAMES shall have the opportunity to purchase same on the same terms (or more favorable if the parties agree) as said bona fide written offer.  Such right shall not be unreasonably withheld.

6.2(B) <u>Sale of Game Company.</u>  In the event that GAME COMPANY should undergo a Sale of the Company, all Anticipated Dates listed in Schedule B shall become "of the essence" and any date missed by GAME COMPANY shall be deemed to be a material breach of this Agreement.  GALA GAMES shall be given the right to terminate this Agreement subject to Section 9.2.  In the case of termination for Material Breach under this Section, GAME COMPANY shall transfer to GALA GAMES as full and complete satisfaction of its obligations hereunder the entire Development Budget provided to GAME COMPANY subject to fifteen (15%) percent interest.  Notwithstanding the foregoing, should the Sale of the Company be to GALA GAMES, GAME COMPANY shall either (i) return the entire Development Budget to GALA GAMES, or (ii) contribute the amount of the Development Budget to the purchase price at the closing of the purchase.

6.3 <u>GALA GAMES's Ownership</u>. As between GALA GAMES and its affiliates and GAME COMPANY, GALA GAMES and its affiliates own the following except to the extent that they contain

---

[1] A "Sale of the Company" shall mean a transaction or series of related transactions in which a Person, or a group of related Persons, acquires from stockholders of the GAME COMPANY shares representing more than fifty (50%) of related Persons, acquires from stockholders of the GAME COMPANY shares representing more than fifty (50%) of the outstanding voting power of the Company or a transaction.

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



any GAME COMPANY IP (including the Licensed IP): (a) the Game Virtual Currencies and the Marketing Materials for the Branded Game, (b) all hardware (other than end user mobile devices) related to the operation of the Branded Game on the GALA GAMES Platform, the GALA GAMES Platform, Game Data and Personal Data within the GALA GAMES Platform, GALA GAMES Platform Data, and GALA GAMES Marks; and (c) all of GALA GAMES's or its affiliates' other properties in whatever form, including hardware, software, customer data, user data, design documents, marketing plans, specifications, manuals, know how, technology, methods, idea, concepts, websites, billing systems, anti-hacking software and all other GALA GAMES Materials, and in each case, where applicable, subject to Section 6.2, including GAME COMPANY's underlying rights in the Licensed IP (collectively, the "GALA GAMES Property"). GALA GAMES and its affiliates own and reserve all right, title, and interest in and to the GALA GAMES Property.

6.4 <u>Feedback</u>. For any feedback or suggestions provided by GAME COMPANY to GALA GAMES or any of its affiliates regarding any GALA GAMES Property, including any modification to any source code that GALA GAMES makes available to GAME COMPANY ("GG <u>Feedback</u>"), GAME COMPANY hereby assigns to GALA GAMES all of GAME COMPANY's right, title, and interest in and to the GG Feedback, including all intellectual property and proprietary rights. Accordingly, GG Feedback is also GALA GAMES Property. For the avoidance of doubt, GG Feedback shall not include any GAME COMPANY IP or Licensed IP.

6.5 <u>Feedback</u>. For any feedback or suggestions provided by GALA GAMES to GAME COMPANY or any of its affiliates regarding any GAME COMPANY IP including any modification to any source code that GALA GAMES makes available to GAME COMPANY ("GAME COMPANY <u>Feedback</u>"), GALA GAMES hereby assigns to GAME COMPANY all of GALA GAMES's right, title, and interest in and to the GAME COMPANY Feedback, including all intellectual property and proprietary rights. Accordingly, Feedback is also GAME COMPANY IP Property.

## 7. EXCLUSIVITY

7.1 <u>Exclusivity</u>. Subject to the terms and conditions of this Agreement, the appointment of GALA GAMES as the exclusive publisher and distributor of the Branded Game is exclusive in respect of blockchain gaming and blockchain platforms and all other computer and video games platforms throughout the Exclusive Game Platform Term and GAME COMPANY and its Affiliates will not in the Territory:

 a. publish, operate, or distribute any Branded Game or otherwise exercise any of the rights granted to Licensee hereunder in relation to any Branded Game; or

 b. grant to any other Person any license or other right to publish, operate, or distribute any Branded Game or otherwise exercise any of the rights granted to Licensee hereunder in relation to any Branded Game without the prior written consent of GALA GAMES;

## 8. CONFIDENTIAL INFORMATION

8.1 "<u>Confidential Information</u>" means any: (a) proprietary information of a party to this Agreement disclosed by one party to the other that is in written, graphic, machine readable or other tangible form and is marked "Confidential" or "Proprietary" or in some other manner to indicate its confidential nature or which by its nature and the circumstances of its disclosure ought reasonably to be considered confidential; and (b) all information collected or developed by a party regarding its customers. Confidential

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



Information also include oral disclosures if that information would reasonably be understood to be confidential from the context of disclosure. GALA GAMES Platform Data, Game Data and Personal Data collected within the GALA GAMES Platform is GALA GAMES's Confidential Information.

8.2 <u>Exceptions</u>. Confidential Information will not include any information that: (a) was publicly known and made generally available prior to the time of disclosure by the disclosing party; (b) becomes publicly known and made generally available after disclosure by the disclosing party to the receiving party through no action or inaction of the receiving party; (c) is already in the possession of the receiving party at the time of disclosure; (d) is obtained by the receiving party from a third party without a breach of that third party's obligations of confidentiality; or (e) is independently developed by the receiving party without use of or reference to the disclosing party's Confidential Information.

8.3 <u>Non-Use and Non-Disclosure</u>. Each party will: (a) treat as confidential all Confidential Information of the other party; (b) not disclose that Confidential Information to any third party, except on a "need to know" basis to third parties that have signed a non-disclosure agreement containing provisions substantially as protective as the terms of this Section provided that the disclosing party has obtained the written consent to that disclosure from the other party; and (c) will not use that Confidential Information except in connection with performing its obligations or exercising its rights under this Agreement. Each party is permitted to disclose the other party's Confidential Information if required by law or stock exchange listing rules so long as the other party is given prompt written notice of that requirement prior to disclosure and assistance in obtaining an order protecting that information from public disclosure.

## 9. TERM AND TERMINATION

9.1 <u>Term</u>. This Agreement commences upon the Effective Date and continues for the Term specified on the Cover Page.

9.2 <u>Termination for Material Breach</u>. Either party may terminate this Agreement if the other party does not cure its serious material breach of this Agreement within 30 days of receiving written notice of the material breach from the non-breaching party. Termination in accordance with this Section 9.2 will take effect when the breaching party receives written notice of termination from the non-breaching party, which notice must not be delivered until the breaching party has failed to cure its material breach during the 30-day cure period.

9.3 <u>Insolvency</u>. A party may immediately terminate this Agreement upon written notice to the other party if the other party is subject to proceedings in bankruptcy or insolvency, voluntarily or involuntarily, if a receiver is appointed with or without the other party's consent, if the other party assigns its property to its creditors or performs any other act of bankruptcy, or if the other party becomes insolvent and cannot pay its debts when they are due.

9.4 <u>Effects of Termination or Expiration</u>. Upon the expiration or termination of this Agreement:

(a) Unless either party (the "Terminating Party") terminates this Agreement for the other party's (the "Terminated Party") uncured material breach of this Agreement, the Terminating Party will pay to the Terminated Party all monies due and owing, as applicable, that the Terminating Party owes to the Terminated Party as of the date of termination or expiration under this Agreement.

(b) Following any termination or expiration, both parties may fulfill any purchase of a Branded Game or Game Virtual Item that was pending as of the date that the termination or expiration takes effect. Unless the Terminating Party determines otherwise, any termination or expiration will not affect further access, downloads or re-downloads of Branded Game, Game Virtual Currency, or Game Virtual Items by



end users who have purchased a Branded Game, Game Virtual Currency, or Game Virtual Items before the date the termination or suspension takes effect, nor their rights in previously-downloaded Branded Game, Game Virtual Currency, or Game Virtual Items.

(c) Terminating Party is not obligated to return copies of any materials received from the Terminated Party to the Terminated Party, subject to Section 8 above.

(d) In the case of termination for Material Breach under this Section by GAME COMPANY, GAME COMPANY shall transfer to GALA GAMES as full and complete satisfaction of its obligations hereunder the entire Development Budget provided to GAME COMPANY subject to fifteen (15%) percent interest unless if GALA has already recouped same under Section 5.1A.

9.5 <u>Survival of Certain Obligations</u>. The following provisions will survive the termination or expiration of this Agreement: Sections 2, 5 through 13, and any other provisions that, by their nature, are intended to survive. All liabilities that accrued prior to termination will also survive termination or expiration of this Agreement.

## 10.  REPRESENTATIONS AND WARRANTIES

10.1 <u>Authorization; Compliance with Laws</u>. Each party represents and warrants that: (a) it is duly organized, validly existing, and in good standing in the jurisdiction stated in the preamble to this Agreement; (b) the execution and delivery of this Agreement by such party has been duly and validly authorized; (c) this Agreement constitutes a valid, binding, and enforceable obligation of such party; and (d) such party will comply with all applicable laws, rules, and regulations of any applicable governmental body in performing under this Agreement.

10.2 <u>No Conflict</u>. Each party represents and warrants that it will not grant any rights under any future agreement, nor will it permit or suffer any lien, obligation, or encumbrance that will conflict with the full enjoyment by such party of its rights under this Agreement.

10.3 <u>Right to Make Full Grant</u>. Each party represents and warrants that it has and will have all requisite rights to fully perform its obligations under this Agreement and to grant to the other party all rights granted under this Agreement free and clear of all agreements, liens, adverse claims, encumbrances, and interests of any person or entity, including such party's employees, contractors, and its contractors' employees and agents.

10.4 <u>Performance and Licensed IP</u>. (A) GAME COMPANY represents and warrants that: (a) the media on which Licensed IP is delivered will be free of defects in materials and workmanship; (b) the materials and information provided as part of the Licensed IP are accurate in all material respects; and (c) GALA GAMES will be able to fully use the Licensed IP without the use of any tools or other computer programs other than standard off the shelf software packages customarily used by competent video game publishers. If GAME COMPANY breaches a representation or warranty in this Section 10.4(A), GAME COMPANY will promptly repair or replace a defective item or deliver a missing item. (B) GALA GAMES represents and warrants that: (a) the media on which the GALA GAMES Materials are delivered will be free of defects in materials and workmanship; (b) the materials and information provided as part of the Branded Game (except for the Licensed IP) and GALA GAMES Materials are accurate in all material respects; and (c) GAME COMPANY will be able to fully use the Branded Game and GALA GAMES Materials without the use of any tools or other computer programs. If GALA GAMES breaches a representation or warranty in this Section 10.4(B), GALA GAMES will promptly repair or replace a defective item or deliver a missing item.

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



10.5 <u>Third Party Materials</u>. (A) GAME COMPANY represents and warrants that the Licensed IP will not contain any software code that is subject to a license requiring, as a condition of use, modification, or distribution of the software code, that the software code or other software code combined or distributed with it be: (a) disclosed or distributed in source code form; (b) licensed for the purpose of making derivative works; or (c) redistributable at no charge. (B) GALA GAMES represents and warrants that the Branded Game (except for the Licensed IP) and GALA GAMES Materials will not contain any software code that is subject to a license requiring, as a condition of use, modification, or distribution of the software code, that the software code or other software code combined or distributed with it be: (a) disclosed or distributed in source code form; (b) licensed for the purpose of making derivative works; or (c) redistributable at no charge.

10.6 <u>Services</u>. Each party represents and warrants that any services it performs under this Agreement will be performed in a timely, competent, professional, and workmanlike manner by qualified personnel.

10.7 <u>Legal Proceedings</u>. (A) GAME COMPANY represents and warrants that: (a) GAME COMPANY is not involved in any legal proceeding (litigation, arbitration, mediation, or otherwise) relating to any Licensed IP; (b) GAME COMPANY has not received notice of a claim relating to any Licensed IP; and (c) GAME COMPANY is not aware of any facts or circumstances that might lead to a legal proceeding relating to any Licensed IP. (B) GALA GAMES represents and warrants that: (a) GALA GAMES is not involved in any legal proceeding (litigation, arbitration, mediation, or otherwise) relating to any GALA GAMES Marks or GALA GAMES Materials to be used in the Branded Game or any marketing materials therefor; (b) GALA GAMES has not received notice of a claim relating to any GALA GAMES Marks or GALA GAMES Materials to be used in the Branded Game or any marketing materials therefor; and (c) GALA GAMES is not aware of any facts or circumstances that might lead to a legal proceeding relating to any GALA GAMES Marks or GALA GAMES Materials to be used in the Branded Game or any marketing materials therefor.

10.8 <u>Non-infringement</u>. (A) GAME COMPANY represents and warrants that: (a) none of the Licensed IP infringes, misappropriates, or otherwise violates the rights of a third party nor will cause GALA GAMES's distribution, use, or reproduction of a Branded Game or any related item to infringe, misappropriate, or otherwise violate the rights of a third party; and (b) GAME COMPANY does not know of a third party that is infringing GAME COMPANY's rights to any of the Licensed IP. (B) GALA GAMES represents and warrants that: (a) none of the GALA GAMES Marks and GALA GAMES Materials or any other materials or marks made by or on behalf of GALA GAMES or its affiliates to be used in the Branded Game or in any marketing materials therefor infringes, misappropriates, or otherwise violates the rights of a third party; (b) none of the GALA GAMES Marks and GALA GAMES Materials, or any other materials or marks made by or on behalf of GALA GAMES or its affiliates to be used in the Branded Game or in any marketing materials therefor will cause GAME COMPANY's distribution, use, or reproduction of a Branded Game or any related item to infringe, misappropriate, or otherwise violate the rights of a third party; and (c) GALA GAMES does not know of a third party that is infringing GALA GAMES's rights to any GALA GAMES Marks or GALA GAMES Materials to be used in the Branded Game or any marketing materials therefor.

## 11. INDEMNIFICATION

11.1 <u>Indemnification</u>. Each party (the "Indemnifying Party") will indemnify, defend, and hold harmless the other party and its affiliates and their directors, officers, and employees (the "Indemnified

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



Party") from and against all taxes, losses, damages, liabilities, costs, and expenses, including attorneys' fees and other legal expenses, arising directly or indirectly from or in connection with any third party claim arising out of: (a) any breach by the Indemnifying Party or its employees or agents of any of the warranties or representations contained in this Agreement; (b) any failure of the Indemnifying Party to perform services under this Agreement in accordance with all applicable laws, rules, and regulations; (c) any violation or claimed violation of a third party's rights resulting in whole or in part from the Indemnified Party's exercise of its license rights under this Agreement; or (d) the Indemnifying Party's negligence or willful misconduct.

11.2 <u>Procedure</u>. The Indemnified Party will promptly notify the Indemnifying Party of any claim that is subject to this Section 11, and will permit the Indemnifying Party to assume and control the defense of that claim. The Indemnified Party will, however, have the right to employ separate counsel and participate in the defense of claims. The Indemnifying Party will have the sole authority to defend, compromise, settle, or otherwise dispose of claim, but the Indemnifying Party will not agree to any disposition or settlement of a claim that admits liability or imposes restrictions, sanctions or duties of performance or payment on the Indemnified Party without the Indemnified Party's prior written consent. If the parties agree to settle a claim, neither party will publicize the settlement without first obtaining the written permission of both parties.

11.3 <u>Intellectual Property Infringement</u>. If any claim concerning an intellectual property right of a third party could prevent or limit either party's (the "Affected Party") exercise of the rights and licenses granted to it hereunder, the other party will, in addition to its obligations under Section 11.1, take one of the following actions at its sole expense with respect to the Licensed IP that is not made by or on behalf of GALA GAMES or its affiliates (where GALA GAMES is the Affected Party) or with respect to the Branded Game (other than the Licensed IP) and the GALA GAMES Materials (where GAME COMPANY is the Affected Party):

(a) procure for the Affected Party the right to continue exercise of its rights to the infringing content;

(b) modify or amend the relevant content so that it no longer infringes the third party's rights; or

(c) replace the infringing content with an item that has substantially the same or better capabilities that does not infringe the third party's rights.

## 12. LIMITATION OF LIABILITY

12.1 <u>Disclaimer of Warranties</u>. EXCEPT AS EXPRESSLY CONTAINED IN THIS AGREEMENT ALL PERFORMANCE BY EACH PARTY AND ITS AFFILIATES IS PROVIDED "AS IS." EXCEPT AS EXPRESSLY CONTAINED IN THIS AGREEMENT EACH PARTY AND ITS AFFILIATES MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND WITH RESPECT TO ANY BRANDED GAME OR LICENSED IP OR OTHERWISE, WHETHER EXPRESS, IMPLIED, OR STATUTORY, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, QUALITY, OR ACCURACY. EXCEPT AS EXPRESSLY CONTAINED IN THIS AGREEMENT EACH PARTY ACKNOWLEDGES AND AGREES THAT THE OTHER PARTY CANNOT ENSURE THAT ANY MATERIAL SUBMITTED BY OR ON BEHALF OF THAT OTHER PARTY WILL BE PROTECTED FROM THEFT OR MISUSE, AND THAT OTHER PARTY WILL HAVE NO LIABILITY ARISING FROM A FAILURE

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



OF ANY SECURITY TECHNOLOGY OR PROCEDURE OR OF ANY END USER TO COMPLY
WITH THE EULA.

12.2 Disclaimer of Consequential Damages. EXCEPT IN RESPECT OF ANY INDEMNIFIED
CLAIM, NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS
AGREEMENT, NEITHER PARTY WILL, UNDER ANY CIRCUMSTANCES, BE LIABLE TO THE
OTHER PARTY FOR INDIRECT, CONSEQUENTIAL, INCIDENTAL, SPECIAL, PUNITIVE, OR
EXEMPLARY DAMAGES ARISING OUT OF OR RELATED TO THE TRANSACTION
CONTEMPLATED UNDER THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO LOST
PROFITS OR LOSS OF BUSINESS.

12.3 Cap on Liability. EXCEPT IN RESPECT OF ANY INDEMNIFIED CLAIM AND EXCEPT IN
RESPECT OF THE PAYMENT BY GALA GAMES TO GAME COMPANY OF THE AGREED
SHARE OF ADJUSTED GAME NET REVENUE, UNDER NO CIRCUMSTANCES WILL A
PARTY'S OR ANY OF ITS AFFILIATE'S TOTAL LIABILITY OF ALL KINDS ARISING OUT OF
OR RELATED TO THIS AGREEMENT (INCLUDING BUT NOT LIMITED TO WARRANTY
CLAIMS), REGARDLESS OF THE FORUM AND REGARDLESS OF WHETHER ANY ACTION OR
CLAIM IS BASED ON CONTRACT, TORT, OR OTHERWISE, EXCEED THE TOTAL AMOUNT
PAID TO OR PAYABLE BY SUCH PARTY TO THE OTHER PARTY UNDER THIS AGREEMENT
FOR THE TWELVE-MONTH PERIOD PRECEDING THAT CLAIM.

12.4 Independent Allocations of Risk. EACH PROVISION OF THIS AGREEMENT THAT
PROVIDES FOR A LIMITATION OF LIABILITY OR EXCLUSION OF DAMAGES IS TO
ALLOCATE THE RISKS OF THIS AGREEMENT BETWEEN THE PARTIES. THIS ALLOCATION
IS AN ESSENTIAL ELEMENT OF THE BASIS OF THE BARGAIN BETWEEN THE PARTIES.
EACH OF THESE PROVISIONS IS SEVERABLE AND INDEPENDENT OF ALL OTHER
PROVISIONS OF THIS AGREEMENT, AND EACH OF THESE PROVISIONS WILL APPLY EVEN
IF THESE PROVISIONS FAIL THEIR ESSENTIAL PURPOSE.

## 13.  MISCELLANEOUS

13.1 Subcontractors. Each party may exercise its respective rights under this Agreement via its
Affiliates and subcontractors provided that they satisfy the requirements and standards agreed pursuant to
this Agreement. Each party will be responsible for the compliance of its Affiliates and subcontractors
with the terms of this Agreement.

13.2 Independent Contractor. The parties are independent contractors in the performance of this
Agreement. Without limiting the generality of the previous sentence, neither party is authorized to bind
the other party to any liability or obligation or to represent that it has any authority to do so.

13.3 Press Release. Except as expressly set forth in this Agreement or as required by the laws of any
jurisdiction (including, the United States Securities and Exchange Commission or any national securities
exchange or similar agency), neither party will make any public announcement or press release regarding
the cooperation contemplated by this Agreement without the prior consent of the other party. Any party
required by law to make a public announcement regarding any matter related to the cooperation
contemplated by this Agreement will solicit from and consider in good faith the other party's feedback on
the content of that public announcement.  Notwithstanding the foregoing the GAME COMPANY
understands that GALA GAMES relies on its discord heavily for the promotion of its upcoming games.

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



GALA GAMES may choose at its own discretion to intentionally leak agreed-upon images or teasers on its discord channel.

13.4 <u>Force Majeure</u>. No party to this Agreement will be liable to the other party for any failure or delay in fulfilling an obligation under this Agreement, if that failure or delay is attributable to circumstances beyond its control, including, but not limited to, any fire, power failure, labor dispute, war, civil dispute, or government action (including any new law or regulation) or inaction ("<u>Force Majeure</u>"). The parties agree that the deadline for fulfilling the obligation in question, and the Term, as applicable, will be extended for a period of time equal to that of the continuance of the Force Majeure.

13.5 <u>Governing Law and Resolution of Disputes</u>. This Agreement and any dispute arising from or related to this Agreement will be governed by and construed in accordance with laws of Wyoming, without giving effect to any choice or conflict of law provision or rule that would cause the application of laws of any jurisdiction other than those of Wyoming; and the parties agree to submit to the exclusive jurisdiction of the Wyoming courts.

13.6 <u>Notices</u>. All notices under the terms of this Agreement will be given in writing and sent by overnight courier, registered mail, email or will be delivered by hand to the addresses set forth on the Cover Page for GALA GAMES, and to the addresses set forth on the Cover Page for GAME COMPANY. All notices will be deemed to have been received when they are hand delivered, or five Business Days after their mailing.

13.7 <u>Assignment</u>. Neither this Agreement nor any rights or obligations under this Agreement may be assigned or otherwise transferred by either party, in whole or in part, whether voluntarily or by operation of law, without the prior written consent of the other party. GALA GAMES and GAME COMPANY may assign this agreement or any rights and obligations under this Agreement to an affiliate or subsidiary without the other party's consent by providing a written notice to the other party prior to such assignment. Subject to this Section, this Agreement will be binding upon and will inure to the benefit of the parties and their respective successors and assigns. Any assignment in violation of this Section will be null and void.

13.8 <u>Waiver</u>. Any waiver of the provisions of this Agreement or of a party's rights or remedies under this Agreement must be in writing provided in accordance with Section 13.6 (Notices) to be effective. Failure, neglect, or delay by a party to enforce the provisions of this Agreement or its rights or remedies at any time will not be construed as a waiver of the party's rights under this Agreement and will not in any way affect the validity of the whole or any part of this Agreement or prejudice the party's right to take subsequent action. Exercise or enforcement by either party of any right or remedy under this Agreement will not preclude the enforcement by the party of any other right or remedy under this Agreement or that the party is entitled by law to enforce.

13.9 <u>Severability</u>. If any term, condition, or provision in this Agreement is found to be invalid, unlawful, or unenforceable to any extent, the parties will endeavor in good faith to agree to amendments that will preserve, as far as possible, the intentions expressed in this Agreement. If the parties fail to agree on an amendment, the invalid term, condition, or provision will be severed from the remaining terms, conditions, and provisions of this Agreement, which will continue to be valid and enforceable to the fullest extent permitted by law, and the Tribunal will preserve, as far as possible, the original intention of the parties with respect to the severed term, condition, or provision.



13.10 <u>Remedies Cumulative</u>. No single or partial exercise of any right or remedy will preclude any other or further exercise of any other right or remedy. Rights and remedies provided in this Agreement are cumulative and not exclusive of any right or remedy provided at law or in equity.

13.11 <u>Confidentiality of Agreement</u>. Each party will not disclose any terms of this Agreement to any third party without the consent of the other party, except as required by applicable law.

13.12 <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which will be deemed to be an original and together will constitute one and the same agreement. This Agreement may also be executed and delivered by facsimile or email and that execution and delivery will have the same force and effect of an original document with original signatures.

13.13 <u>Language</u>. If this Agreement is executed in more than one language, then only the English version is binding on the parties.

13.14 <u>Headings</u>. Headings are used in this Agreement for reference only and will not be considered when interpreting this Agreement.

13.15 <u>Integration</u>. This Agreement and all exhibits contain the entire agreement of the parties with respect to the subject matter of this Agreement and supersede all previous communications, representations, understandings, and agreements, either oral or written, between the parties with respect to that subject matter. No terms, provisions, or conditions of any purchase order, acknowledgement, or other business form that either party may use in connection with the transactions contemplated by this Agreement will have any effect on the rights, duties, or obligations of the parties under, or otherwise modify, this Agreement, regardless of any failure of a receiving party to object to these terms, provisions, or conditions. This Agreement may not be amended, except by a writing signed by both parties.

IN WITNESS WHEREOF, the parties named herein set their hand and seal on this 22nd day of January, 2022.

Signed, Sealed and Delivered:

*Eric Schiermeyer*
7F22EFF1B70A4B6...

By: Eric Schiermeyer
On Behalf of GALA GAMES

Signed, Sealed and Delivered:

*Ray Davis*
D4502EE0AD1D409...

By: Ray Davis
On Behalf of DRIFTER ENTERTAINMENT, Inc.

DocuSign Envelope ID: E777A3F8-F9D3-46E8-96EF-7E1C47277B61



**EXHIBIT A**

| Milestone | Deliverables | Amount | Anticipated Date |
|---|---|---|---|
| Commencement of Branded Game Development | Signing of Definitive Agreement | $1,000,000.00 | January 22, 2022 |
| Branded Game Ready For Launch Phase | Game Presale | $3,000,000.00 | March 1, 2022 |
| Beta Release of Game | Beta Game/MVP Launch | $3,000,000.00 | July 1, 2022 |
| Release of Game | Commercial Launch | $1,000,000.00 | December 1, 2022 |

**As used above:**

**"Beta Game/MVP Launch"** means a version of the game is made available by GAME COMPANY to GALA GAMES for availability to play by GALA GAMES users who own a specific NFT to access the game.  The version of the game is feature complete but may include bugs and require additional polish.

**"Commercial Launch"** means a version of the game that is content complete is made available by GAME COMPANY to GALA GAMES for availability to play by all GALA GAMES users (does not require the user to own a specific NFT to access the game).  This version shall meet or exceed prevailing industry standards for software release candidates, and GALA GAMES or GAME COMPANY, as applicable, fully enables the monetization features and initiates more than a *de minimus* amount of public marketing support for the Branded Game.

**"Game Presale"** means that GALA GAMES, at its sole discretion, has accepted the following deliverables: (a) NFT creation and release strategy written and agreed upon by the parties, and (b) Game Design Document written by GAME COMPANY and agreed upon by the parties and (c) Gala Games has played a version of the Branded Game and determines to engage in an NFT presale and to move towards a Beta Game/MVP Launch.

**"Game Design Document"** has the meaning given to it in the video game industry.  The purpose of said document is to describe the design of the entire game, and may include text, images, diagrams, concept art, or other media illustrating design decisions.