

## AMENDMENT AND ACKNOWLEDGMENT AGREEMENT

This Amendment and Acknowledgment Agreement (this "**Amendment**") to the Definitive Agreement (defined below) is entered into as of March 10, 2023 (the "**Amendment Effective Date**"), by and between Blockchain Game Partners, Inc. ("**GALA GAMES**"), a corporation organized and existing under the laws of the state of Wyoming, with its principal place of business located at 680 S Cache Street, Suite 100, Jackson, WY 83001, and Drifter Entertainment Inc. ("**GAME COMPANY**"), a corporation organized and existing under the laws of the state of Washington, with its principal place of business located at 4056 9th Avenue NE, Seattle, WA 98105. GALA GAMES and GAME COMPANY may be referred to herein individually as a "**Party**" and collectively as the "**Parties**." Except as expressly provided to the contrary herein, all terms used herein shall have the same meaning as in the Definitive Agreement (defined below).

**WHEREAS**, on or about January 22, 2022, the Parties entered into a Definitive Agreement ("**Definitive Agreement**"), pursuant to which, among other things, the Parties agreed that GAME COMPANY would deliver the Branded Game to GALA GAMES and GALA GAMES would publish and distribute the Branded Game;

**WHEREAS**, on or about May 17, 2022, the Parties signed Definitive Agreement Amendment #1 ("**Amendment #1**"), pursuant to which, among other things, the Parties agreed to change the "Adjusted Game Net Revenue" language;

**NOW THEREFORE**, in consideration of the covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to further amend the Definitive Agreement as follows:

1. **Amendments to the Definitive Agreement**

    1.1 The following provision shall be added to the Definitive Agreement as Section 3.1(a):

    "3.1 (a) Key Employee: GAME COMPANY will dedicate up to four (4) individuals identified by GALA GAMES as essential employees ("Key Employee(s)") to provide services in development of the Branded Game pursuant to the Definitive Agreement. If GAME COMPANY removes any Key Employee(s) from work on the Branded Game or services as provided in the Definitive Agreement, it will provide advance written notice (at least 10 Business Days) to GALA GAMES of such event and any replacement for the removed Key Employee(s) shall require GALA GAMES' prior written consent, which shall not be unreasonably withheld, conditioned or delayed; provided, however, that if a Key Employee is removed and replaced other than with GALA GAMES' prior written consent, GALA GAMES may terminate the Definitive Agreement for material breach under Section 9.2 of the Definitive Agreement. Notwithstanding the foregoing, if a Key Employee leaves the employment of or terminates a consulting or service contract with GAME COMPANY, or is incapacitated or otherwise unable to continue working on the services outlined in the Definitive Agreement, the failure of GAME COMPANY to replace such Key Employee with GALA GAMES' consent shall not give GALA GAMES the right to terminate the Definitive Agreement for material breach under Section 9.2, provided that GAME COMPANY works in good faith with GALA GAMES to replace such Key Employee with qualified replacement. The Key Employees may be updated by mutual

EXHIBIT 2

1



written consent of the Parties."

1.2 The entirety of Section 3.2 of the Definitive Agreement shall be superseded and replaced in its entirety with the following language:

"3.2 <u>Deliverables</u>. The parties acknowledge and agree that GAME COMPANY will deliver to GALA GAMES all deliverables set forth on Exhibit A (the "Deliverables"), and Gala acknowledges and agrees that GAME COMPANY has delivered all deliverables through the Release of Game / Commercial Launch Milestone, materially in accordance with the specifications approved by GALA GAMES. With respect to Console Milestones in 2023 and thereafter, GAME COMPANY will provide such Deliverables materially in accordance with written specifications mutually agreed to by the parties in advance, but in any case, no later than the Milestone Payment Due Date (the "Specifications"). If, at any time in 2023 or thereafter, GALA GAMES reasonably determines that any of the delivered Deliverables do not materially conform to the Specifications, then GALA GAMES will issue to GAME COMPANY a notice of rejection that describes the reasons for the rejection for failure to meet the previously determined written Specifications in accordance with Section 13.6 as soon as reasonably practicable but not later than 10 Business Days following receipt of the applicable Deliverables. Upon receiving the notice of rejection, GAME COMPANY will use commercially reasonable efforts to correct the rejected Deliverables and deliver those corrected Deliverables for test and evaluation by GALA GAMES within thirty (30) days (the "Cure Period") of receiving the notice of rejection. During the Cure Period, the test and evaluation procedures provided in this Section will be repeated for the corrected Deliverables or until GALA GAMES accepts those Deliverables. Notwithstanding the foregoing, if the rejected Deliverables are not corrected within the Cure Period, it will be deemed to be a material breach of this Agreement and subject to Section 9.2(a). In the event that notice of acceptance or notice of rejection is not received within 10 Business Days following receipt of the applicable Deliverables, GAME COMPANY must remind GALA GAMES by email to **legal@gala.games** and in the event that notice of acceptance or notice of rejection is not received within 5 Business Days following such reminder, the Deliverables in question shall be deemed accepted. In addition, upon GALA GAMES's request, GAME COMPANY must provide GALA GAMES with "master copies" of Licensed IP free of charge, for use by GALA GAMES within the scope of its rights licensed by GAME COMPANY hereunder."

1.3 The entirety of Section 3.3(a) and Section 3.3(c) of the Definitive Agreement shall be superseded and replaced in their entirety with the following language:

"(a) GALA GAMES. GALA GAMES will provide reasonable consultation to GAME COMPANY on the iterative creation, design, editing, management, and control of the presentation of the Branded Game on the GALA GAMES Platform and other agreed-upon platforms. The Parties will collaborate on a monthly Web3 strategy towards adapting Web3 strategy to upcoming milestones, provided that failure to do so shall not be deemed a breach of this Amendment or the Agreement. GALA GAMES retains authority and responsibility to stop any end user or other transaction or take other actions to restrict access to or the availability of any feature of the Branded Game on the GALA GAMES Platform, in the event that it is aware and determines that it is legally necessary to do so.

"(c) <u>Non-Fungible Tokens</u>. GAME COMPANY understands and agrees that the GALA GAMES Platform is dependent and focuses on providing end users with the ability to "own

2



their own content" through the use of Non-Fungible Tokens. As such, GAME COMPANY understands that, once Game Virtual Items are created and provided to the end user in the form of Non-Fungible Tokens, GAME COMPANY cannot then remove said Game Virtual Item or render said Game Virtual Item useless from the Branded Game. GALA GAMES may provide GAME COMPANY with instructions on Game Virtual Items, upon written request by GAME COMPANY. GAME COMPANY agrees that in any upgrades, updates, or otherwise, GAME COMPANY will not de-buff, or reduce the desirability or effectiveness, of any Game Virtual Item in the form of a Non-Fungible Token. GALA GAMES shall have the right to inspect any and all proposed changes or additions to the Branded Game or Game Virtual Items contained in a Branded Game before implementation to ensure that Non-Fungible Tokens contained within the Branded Game are not de-buffed provided that GALA GAMES shall undertake any such inspections expediently and shall not unreasonably withhold, condition, or delay any approval, nor request any unreasonable changes or implement any unreasonable requirement, in respect of any such changes or additions to the Branded Game or Game Virtual Items or the use of Non-Fungible Tokens. If GALA GAMES reasonably determines that any proposed changes or additions to the Branded Game or Game Virtual Items do not conform with at its discretion or with previously provided, commercially reasonable instructions, GALA GAMES will issue to GAME COMPANY a notice of rejection of the proposed changes or additions in accordance with Section 13.6 as soon as reasonably practicable. Upon receiving a notice of rejection from GALA GAMES that describes the reasons for its rejection of the proposed changes or additions, GAME COMPANY will refrain from implementing the proposed changes or additions and/or will use commercially reasonable efforts to revise the proposed changes that have been rejected and deliver those revised proposed changes to GALA GAMES within the Cure Period (defined below). During the Cure Period, the test and evaluation procedures provided in this Section will be repeated for the corrected deliverables or until GALA GAMES accepts those deliverables. Notwithstanding the foregoing, if the deliverables are not corrected within the Cure Period, it will be deemed a material breach of this Agreement and subject to Section 9.2(a). In the event that notice of acceptance or rejection of the proposed changes is not received within 10 Business Days following receipt of a request for approval of the proposed changes, GAME COMPANY must remind GALA GAMES by email to **legal@gala.games** and in the event that notice of acceptance or rejection is not received within 5 Business Days following such reminder, the applicable proposed changes or additions to the Branded Game or Game Virtual Items or the use of Non-Fungible Tokens shall be deemed accepted. This representation is binding upon, and inures to the benefit of, the parties and their respective successors and assigns. This representation shall survive any and all sale under this Agreement, including a sale under Section 6 of this Agreement, with specific reference to, but not limited to, any sale of Licensed IP, sale of GAME COMPANY, or otherwise.

1.4 The entirety of Section 4.1 Marketing, Section 5.1 Agreement as to Costs ("Development Budget"), and Section 5.2 Payments and Reports, in the Definitive Agreement shall be superseded and replaced in its entirety with the following language:

"4.1 Marketing. GALA GAMES will use best efforts in the marketing, advertising, and promotion of the Branded Game on the GALA GAMES Platform, the console targeted for Console Launch, and other mutually agreed-upon platforms. This includes, but is not limited to, all Non-Fungible Token presale and distribution, marketing and user acquisition. GALA GAMES undertakes to spend at least as much in such marketing, advertising and promotion efforts, as it spends on other games on the GALA GAMES



Platform that have similar development budgets."

"5.1 <u>Agreement as to Costs ("Development Budget")</u>. GALA GAMES agrees to provide Eight Million and 00/100 USD (US $8,000,000.00) ("**Development Budget**") for the Branded Game based on the Development Schedule, attached as Exhibit A and made a part hereof. For the avoidance of doubt, GAME COMPANY acknowledges and agrees that as of the Amendment Effective Date, GALA GAMES has paid GAME COMPANY Seven Million Dollars and 00/100 ($7,000,000.00) of the Development Budget. The remaining balance owed from the Development Budget in the amount of One Million Dollars and 00/100 ($1,000,000.00) (hereinafter referred to as the "**Remaining Development** Fee") is due and owing within fifteen (15) days upon execution and delivery of that certain Amendment and Acknowledgment Agreement to this Agreement entered into as of the Amendment Effective Date, and as a condition of the effectiveness thereof. In addition to the Remaining Development Fee, GALA GAMES shall pay a total of One Million and Five Hundred Thousand Dollars and 00/100 ($1,500,000.00) ("Game Console Fee") for the Game Console Release (defined below) which shall be payable in increments based on the Milestone Payment Dates set forth in Exhibit A. Game Console Fee will be non-refundable but shall be recouped in the calculation of Adjusted Game Net Revenues.

5.2 Payments and Reports. GALA GAMES will timely pay, on a quarterly basis, via wire or electronic funds transfer to the GAME COMPANY account as provided by the GAME COMPANY, GAME COMPANY's share of all Adjusted Game Net Revenue derived from the Branded Game, together with all other Income or Revenue due GAME COMPANY under this Agreement. GALA GAMES will provide a quarterly report upon written request. All payments, net of all applicable withholding income taxes if any, will be made in cryptocurrency or United States Dollars, which shall be determined in the sole discretion of GALA GAMES.

1.5 The entirety of Section 9.2 of the Definitive Agreement shall be superseded and replaced in its entirety with the following language:

"9.2(a) <u>Termination for Material Breach</u>. Either Party may terminate this Agreement if the other Party does not cure its serious material breach of this Agreement within thirty (30) days ("Cure Period") of receiving written notice of the material breach from the non-breaching Party. Termination in accordance with this Section 9.2 will take effect when the breaching Party receives written notice of termination from the non-breaching Party, which notice must not be delivered until the breaching Party has failed to cure its material breach during the Cure Period."

1.6 The following provision shall be added to the Definitive Agreement as Section 9.2(b):

"9.2(b) <u>Termination for Convenience</u>. GALA GAMES may terminate this Agreement, without cause and/or without the occurrence of default, by giving thirty (30) days written notice to GAME COMPANY ("**Termination for Convenience**"). Upon any such termination for convenience, GALA GAMES will only be liable to pay for sum of a) the Deliverables accepted up until such termination and b) if a Termination of Convenience is

given before the Console Launch, then a pro rata amount of the Seven Hundred Fifty Thousand and 00/100 USD ($750,000.00 USD) of the Console Launch budget. For the avoidance of doubt, the pro rata amount will be determined using a daily rate formula, in which, the $750,000.00 shall be divided by 90 days starting on March 10, 2023 through June 10, 2023. In the event that GALA GAMES terminates for convenience, GALA GAMES shall pay the pro rata amount up until the 30th day after written notice is given to GAME COMPANY. Notwithstanding the foregoing, the Exclusive Game Platform Term with respect to all gaming and other platforms, other than blockchain gaming and blockchain platforms, shall automatically and immediately cease as of the date of such notice; and (ii) Sections 6.2(A) Right of First Refusal and 6.2(B) Sale of Game Company shall be waived by GALA GAMES on such notice."

1.7 The following provision shall be added to the Definitive Agreement as Section 9.4(e):

"(e) Upon the expiration or termination of this Agreement for uncured material breach due to the failure to deliver the Deliverables according to the Specifications by GAME COMPANY as set forth in Section 3.2 and Exhibit A, the license to the Licensed IP under Section 1 shall be automatically expanded to include the right by GALA GAMES to use the Licensed IP to complete the development of the Branded Game and maintain the operation of the Branded Game (and GAME COMPANY shall provide reasonable cooperation and assistance to GALA GAMES upon GALA GAMES' written request and at their expense in transitioning the development of the Branded Game to an alternate service provider approved by GALA GAMES, including delivering the source code for the Branded Game) in perpetuity.



1.8 The entirety of Exhibit A of the Definitive Agreement shall be replaced with the following:

## "EXHIBIT A

## DEVELOPMENT SCHEDULE

| Milestone | Deliverables | Milestone Amount | Milestone Due Date |
|---|---|---|---|
| Commencement of Branded Game Development | Signing of Definitive Agreement | $1,000,000.00 | January 22, 2022 |
| Branded Game Ready For Launch Phase | Game Presale | $3,000,000.00 | March 1, 2022 |
| Beta Release of Game | Beta Game/MVP Launch | $3,000,000.00 | July 1, 2022 |
| Release of Game | Commercial Launch | $1,000,000.00 | Within 15 days of Amendment Effective Date |
| Commencement of Console Development | Signing of Amendment | $750,000.00 | Within 15 days of Amendment Effective Date |
| Release of Game on Console | Console Launch | $750,000.0 0 | June 1, 2023 |



As used above: **"Beta Game/MVP Launch"** means a version of the game is made available by GAME COMPANY to GALA GAMES for availability to play by GALA GAMES users who either own a specific NFT to access the game or purchase the game via Stream or similar platform. The version of the game is feature complete but may include bugs and require additional polish.

**"Commercial Launch"** means a version of the game that is content complete is made available by GAME COMPANY to GALA GAMES for availability to play by all GALA GAMES users (does not require the user to own a specific NFT to access the game). This version shall meet or exceed prevailing industry standards for software release candidates, and GALA GAMES or GAME COMPANY, as applicable, fully enables the monetization features and initiates more than a de minimus amount of public marketing support for the Branded Game.

**"Game Presale"** means that GALA GAMES, at its sole discretion, has accepted the following deliverables: (a) NFT creation and release strategy written and agreed upon by the Parties, and (b) Game Design Document written by GAME COMPANY and agreed upon by the Parties and (c) Gala Games has played a version of the Branded Game that contains GDD/TDD gameplay, prototype, visual target prototype, and feature greybox, and determines to engage in an NFT presale and to move towards a Beta Game/MVP Launch.

**"Console Game"** means a version for a console version of the Branded Game to be determined, feature parity with the Steam release, no Web 3 features. For the avoidance of doubt, all references made to Branded Game within the Agreement shall also refer to the Console version of the Branded Game.

Console Development Specifications: Shall be provided by Gala in a separate agreement. Specific deliverables shall be mutually agreed upon by both Parties in writing (email is acceptable) within 30 days of Amendment Effective Date. For the avoidance of doubt, the Console Development Specifications shall include a Battle Pass system that can be used in the web2 and web3 version of the Branded Game.

2. **No Other Changes**. As specifically modified herein, GALA GAMES and GAME COMPANY agree that the Definitive Agreement, as previously amended, remains in full force and effect, is binding by all of its terms, and is hereby ratified and confirmed as though set forth at length herein. Each Party warrants, represents and affirms that it has read and understands the terms and conditions set forth in the

Document Ref: 58KJD-MQYQ7-AZYZV-U4EZN      Page 7 of 8

Definitive Agreement and in this Amendment and in the prior amendment and it hereby expressly validates all obligations and covenants pertaining to it therein. Each Party acknowledges and understands that it has the right to consult legal counsel concerning this Amendment and that it has either consulted with such legal counsel or has voluntarily waived such right to do so.

3. **Miscellaneous**. This Amendment may be signed in counterpart, and may be executed and delivered by facsimile, electronic means and/or email, which when taken together will have the same effect as if signed in the original by all parties hereto. This Amendment, the prior amendment and the Definitive Agreement supersedes all prior agreements among the Parties hereto with respect to the subject matter hereof and contains the entire agreement among the parties with respect to the subject matter hereof. The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

**IN WITNESS WHEREOF**, the Parties have duly executed this Amendment by their signatures below on the dates indicated.

| **BLOCKCHAIN GAME PARTNERS, INC.** | **DRIFTER ENTERTAINMENT INC.** |
|---|---|
| Signature: *Eric Schiermeyer* | Signature: *Ray Davis* |
| Name: Eric Schiermeyer | Name: Ray Davis |
| Title: CEO | Title: CEO |
| Date: 2023-03-17 | Date: 2023-03-17 |

# Signature Certificate

Reference number: 58KJD-MQYQ7-AZYZV-U4EZN

| Signer | Timestamp | Signature |
|---|---|---|
| **Eric Schiermeyer**<br>Email: eric@gala.games | | |
| Sent:<br>Viewed:<br>Signed: | 17 Mar 2023 17:54:45 UTC<br>17 Mar 2023 17:56:32 UTC<br>17 Mar 2023 17:56:54 UTC | *Eric Schiermeyer* |
| **Recipient Verification:** | | |
| ✔ Email verified | 17 Mar 2023 17:56:32 UTC | IP address: 191.102.39.194 |
| **Ray Davis**<br>Email: ray@drifter.games | | |
| Sent:<br>Viewed:<br>Signed: | 17 Mar 2023 17:54:45 UTC<br>17 Mar 2023 18:03:30 UTC<br>17 Mar 2023 18:05:12 UTC | *Ray Davis* |
| **Recipient Verification:** | | |
| ✔ Email verified | 17 Mar 2023 18:03:30 UTC | IP address: 98.97.37.49<br>Location: Seattle, United States |

Document completed by all parties on:
17 Mar 2023 18:05:12 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature solution trusted by 40,000+ companies worldwide.

