IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| DRIFTER ENTERTAINMENT, INC., a Delaware corporation,<br><br>    Plaintiff and<br>    Counter-defendant,<br><br> v.<br><br>BLOCKCHAIN GAME PARTNERS, INC. d/b/a GALA GAMES, a Wyoming corporation,<br><br>    Defendant and<br>    Counterclaimant. | Civil Action No. 23-cv-00187-S |

**JOINT REPORT OF MEETING**
**and**
**PROPOSED JOINT DISCOVERY AND CASE MANAGEMENT PLAN**

1.  State where and when the conference among the parties required by Rule 26(f) of the Federal Rules of Civil Procedure was held, and identify the counsel for each party or any unrepresented *pro se* individual who attended. The name of the participant, address, bar number (where applicable), telephone and fax numbers, and email addresses must be provided.

   **Response:**

     The Rule 26(f) conference was held via videoconference on Tuesday, January 16, 2024. The following counsel attended for Plaintiff Drifter Entertainment, Inc. ("Drifter" or "Plaintiff"):

   | | |
   |---|---|
   | Kim D. Cannon, WY Bar No. 5-1401 | Michael P. Hatley |
   | Cole L. Gustafson, WY Bar No. 7-6070 | *Admitted Pro Hac Vice* |

| | |
|---|---|
| Davis and Cannon, LLP<br>40 South Main Street<br>P.O. Box 728<br>Sheridan, WY 82801<br>Telephone: (307) 672-7491<br>Facsimile: (307) 672-8955<br>cannon@davisandcannon.com<br>cole@davisandcannon.com | McNaul Ebel Nawrot & Helgren PLLC<br>600 University Street, Suite 2700<br>Seattle, WA 98101<br>Telephone: (206) 467-1816<br>Facsimile: (206) 624-5128<br>mhatley@mcnaul.com |

The following counsel attended for Defendant and Counterclaimant Blockchain Game Partners, Inc. d/b/a Gala Games ("Gala" or "Counterclaimant"):

| | |
|---|---|
| John W. Graham, WY Bar No. 7-5742<br>Geittmann Larson Swift LLP<br>East Pearl Street, Suite 200<br>P.O. Box 1226<br>Jackson, WY 83001<br>Telephone: (307) 733-3923<br>Facsimile: (307) 733-3947<br>jwg@glsllp.com | Yoni Rosenzweig<br>*Admitted Pro Hac Vice*<br>Davis Wright Tremaine LLP<br>868 South Figueroa Street, Suite 2400<br>Los Angeles, CA 90017<br>Telephone: (213) 633-6800<br>Facsimile: (213) 633-6899<br>yonirosenzweig@dwt.com |
| | Raphael Holoszyc-Pimentel<br>*Admitted Pro Hac Vice*<br>Davis Wright Tremaine LLP<br>1251 Avenue of the Americas,<br>21st Floor<br>New York, NY 10020<br>Telephone: (212) 489-8230<br>Facsimile: (212) 489-8340<br>rhp@dwt.com |

2. List the cases related to this one that are pending in any state or federal court with the case number and court, and state how they are related.

**Response**:

The parties are not aware of any related cases.

3. Please specify if this is a Jury Trial or a Bench Trial; or if parties anticipate filing a

Motion to Strike Jury Trial demand.

**Response**:

This is a jury trial.  Plaintiff timely filed a jury demand on November 16, 2023 (Dkt. No. 21).  Counterclaimant concurs in seeking a jury.

4. Briefly describe what this case is about.

**Response**:

Plaintiff responds as follows:

This dispute arises out of Gala's breach of a video game development agreement ("Agreement") between Drifter—a small, independent game developer—and Gala—a blockchain-based game publisher.  Pursuant to the terms of the Agreement, Gala agreed to publish, distribute, promote, and fund the development of *Superior*, Drifter's newest game.  Gala was required to fund development through a series of milestone payments upon the receipt of agreed-upon deliverables from Drifter, including a final milestone payment of $750,000 (the "Milestone Payment") upon delivery of a console version of *Superior* (the "Console Game") for Microsoft Xbox.

In July 2023, Drifter delivered the Console Game to Gala as required by the Agreement.  Rather than paying Drifter the Milestone Payment and publishing the Console Game as agreed, Gala breached the Agreement, refused to pay, and failed to publish the Console Game.  Gala also repudiated its obligations in a letter (the "Letter") in which it *admitted to receiving delivery of the Console Game*, but falsely claimed that it had evaluated the game and provided a "Notice of Rejection" as required under the Agreement.  In fact, Gala had not even obtained the Xbox development kits ("Development Kits") necessary to evaluate and publish the Console Game as it was required to do under the Agreement.  Nor did Gala ever provide a Notice of Rejection, as it was required to do if it wanted to request that additional work be performed on the Console Game (the time period to provide such notice has passed).

On September 11, 2023, Drifter, through counsel, emailed Gala's legal team a response letter refuting the misrepresentations in the Letter and reminding Gala that it had in fact never issued any Notice of Rejection, but Gala never responded.  By failing to issue any Notice of Rejection even after being notified of its failure to do so, the Console Game is "deemed accepted" under the Agreement, and Gala may not now turn back the clock and complain of purported bugs in the Console Game (which it was not

even prepared to identify or evaluate anyway because it never procured the Development Kits). In other words, based on the plain language of the Agreement, Gala has accepted delivery of the Console Game, is required to pay for it, and is required to publish it.

In an effort to escape this case-dispositive result, Gala now advances a new made-for-litigation theory: Gala now claims that, actually, it never received delivery of the Console Game. But this assertion is belied by its own Letter, its own post-delivery behavior (Gala never once claimed it had not received the Console Game prior to litigation), and substantial additional evidence.

Gala has simply refused to perform its obligations under the Agreement. To this day—more than six months after delivery of the Console Game—Gala still has not paid Drifter the Milestone Payment, taken any steps to publish the Console Game, or provided any timeline for doing so. As a result, Drifter had no choice but to file the instant litigation for breach of contract and breach of the duty of the implied covenant of good faith and fair dealing.

Counterclaimant responds as follows:

This case is about Drifter's multiple breaches of a game development contract. First, Drifter failed to deliver the "Console Launch" Deliverable—and then failed to preserve the key evidence that would confirm it made no such delivery. What Drifter contends is the Console Game was actually a working draft (or "build") sent via the chat program Slack. This informal and unfinished "delivery" was not, and could not, constitute the finished Console Launch Deliverable. The unfinished status of the build is confirmed by the fact that, among other things, (i) it was buggy and unplayable, (ii) Drifter continued to work on it and fix bugs thereafter, and (iii) Drifter never emailed a reminder to Gala's legal team to accept or reject the deliverable, as Drifter is required to do if it receives neither from Gala. In sum, there was no Console Launch Deliverable, and Gala never accepted any such deliverable. Contrary to Drifter's false assertion, Gala never "admitted" in a letter that the Console Launch was delivered; in fact, the letter that Drifter relies upon says that Drifter failed delivery. Drifter is only entitled to the $750,000 payment upon Drifter's completion, and Gala's acceptance, of the Console Launch Deliverable—neither of which have occurred.

To make matters worse, Drifter has now terminated its development support team, in violation of its contractual obligation to maintain a team to support the game.

Drifter has spoliated much, if not all, of the evidence it would need to prove that it made delivery, which it did not do. Drifter failed to preserve (or affirmatively deleted)

4

the informal Slack message transmitting the build that Drifter claims entitles it to $750,000—likely the most important document in this case.   This spoliation removed the message from both Gala's and Drifter's systems.   In its answer to Gala's counterclaims, Drifter attributes this spoliation to a 60-day retention policy (Dkt. 26, ¶¶ 3, 25)—which Drifter failed to suspend even at the same time that it was threatening legal action against Gala.   At present, Gala does not know if Drifter even preserved the underlying build itself, which will be the subject of discovery.   If Drifter does not even have a true and accurate copy of the game it purported to transmit, it calls into question its factual basis for bringing this lawsuit.

Drifter now claims that its outside counsel's September 11, 2023 letter threatening to sue Gala for breach was actually a "reminder" to Gala to accept or reject the deliverable.   On the face of the letter, this post-hoc reinterpretation strains credulity.   Among other things, the letter never even used the word "remind," and never asked Gala to issue a notice of acceptance or rejection.   And if the letter were a reminder to accept or reject the deliverable, then there was no breach yet—which is at odds with Drifter's position in the letter that Gala was in breach and about to be sued.

In addition to Drifter's noncooperation, spoliation, and premature demand for payment, Drifter has continued its pattern of unclean hands by breaching other contractual provisions.   The same month that Drifter filed this lawsuit, it terminated several designated "Key Employees" without advance notice to and consent by Gala, as required by the Agreement.   And Drifter breached the Agreement's confidentiality clause by needlessly attaching the entire Agreement as an exhibit to its publicly filed complaint.

5. Specify the allegations providing the basis for federal jurisdiction.

   **Response:**

   As set forth in Plaintiff's complaint (Dkt. No. 6) and Gala's answer and counterclaim (Dkt. No. 17), Drifter is a Delaware corporation with its principal place of business located in Washington.   Gala is a Wyoming corporation with a principal office in Wyoming.   Accordingly, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Name the parties who disagree with the plaintiff's jurisdictional allegations and state their reasons for disagreement.

**Response:**

Plaintiff does not disagree with either party's jurisdictional allegations. At present, Counterclaimant does not disagree with either party's jurisdictional allegations.

7. Discuss whether or not the case is complex. If the parties believe that the case is complex, explain why and be prepared to address this issue, including scheduling and case management considerations in particular, during the Initial Pretrial Conference.

    **Response:**

    The parties do not believe that this case is complex.

8. List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.

    **Response:**

    The parties are analyzing whether additional parties or claims are needed at this time. The parties have attached a proposed case schedule as **Exhibit A** hereto, which proposes a deadline of March 15, 2024 as the last day to move to join parties or amend the complaint or counterclaim.

9. List anticipated interventions.

    **Response:**

    The parties do not anticipate any interventions at this time.

10. Describe class-action issues, if any.

    **Response:**

    The parties do not believe that this case presents any class-action issues.

11. State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe specifically the arrangements that have been made to complete the disclosures.

    **Response:**

Both parties made their initial disclosures on January 30, 2024.

12. Describe the proposed agreed discovery plan, including:

    **Response:**

    a. Responses to all the matters raised in Rule 26(f).

        **Response:**

        With respect to each of the issues raised in Rule 26(f)(3):

        (A) The parties do not request any changes in the timing, form, or requirement for initial disclosures. Both parties made their initial disclosures on January 30, 2024.

        (B) Plaintiff has served its first set of discovery requests and seeks discovery on subjects including:
        (i) Gala's receipt of the Console Game; (ii) Gala's efforts to evaluate and publish the Console Game (including when/if it secured the requisite Development Kits); (iii) Gala's failure to issue any Notice of Rejection under the Agreement; (iv) Gala's refusal to pay the Milestone Payment; (v) the allegations in Gala's Letter; and (vi) Gala's motives for breaching the Agreement (including Gala's decision to breach development agreements with certain of its other developers, Gala's capacity to pay the Milestone Payment, the ongoing litigation between Gala's founders alleging theft of millions of dollars of company assets, and reports that Gala wishes cease being a game publisher)

        Counterclaimant will not seek nor participate in improper, untimely, or harassing discovery.

        Counterclaimant has served its first set of discovery requests and seeks discovery on subjects including: (i) the negotiation of the Agreement; (ii) the development and transmission of builds or versions of *Superior*; (iii) Drifter's termination of Key Employees; (iv) Drifter's disclosure of confidential information; (v) Drifter's deletion of relevant documents and retention policies; (vi) Drifter's founder's public statements; and (vii) Drifter's failure to make delivery or subsequent required communications concerning its alleged delivery.

7

The parties have proposed an August 9, 2024 deadline for the close of discovery, and do not believe that discovery should be conducted in phases or be limited to or focused on particular issues.

Counterclaimant notes that key documents in this case—including the message "delivering" the purported Console Game—have been destroyed due to Plaintiff's failure to preserve evidence or protect it from deletion, apparently due to Plaintiff's failure to suspend its own 60-day retention policy (over which Gala has no control).  This deletion took place after litigation was threatened and reasonably foreseeable.  Among the key issues in this case is ascertaining and assessing what exactly was allegedly delivered, a task that is rendered more difficult, if not impossible, due to Plaintiff's spoliation.  Depending on the course of discovery, including the feasibility (or not) of identifying the purported delivery, the proposed discovery cutoff may need to be extended.  Counterclaimant also anticipates a potential motion for sanctions or for other relief under Fed. R. Civ. P. 37 arising from the destruction of the message sending a build of the game and other communications, or an early motion for partial summary judgment due to the lack of evidence to sustain Plaintiff's burden.

Plaintiff denies that there is any legitimate question that the Console Game was delivered—indeed, Gala admitted that the Console Game was delivered in its Letter and never disputed delivery until after this litigation was filed.  Moreover, the referenced message did not "deliver" the Console Game as Defendant alleges.  Instead, the message merely notified Gala that the Console Game had been delivered via the program that the parties had used for delivery of all of the prior "deliverables" under the Agreement—as did the Invoice sent that same day, which Drifter has already produced to Gala.  While the Slack program used by Gala and Drifter for certain of its communications was initially set to retain communications for only sixty days, Drifter corrected this setting as soon as it was brought to Drifter's attention.   In addition, because the referenced Slack communications were between Gala and Drifter, Gala also had access to these communications and could have retained them.

(C)  The parties are in the process of negotiating a proposed protective order and an ESI agreement addressing, among other things, issues related to disclosure, discovery, and preservation of ESI and the forms in which it should be produced.

        However, while Plaintiff is still reviewing Gala's proposed edits to these agreements and negotiations continue, Plaintiff notes that the parties appear to have substantial disagreements with these documents that may delay the start of discovery and affect the feasibility of the proposed case schedule if not resolved promptly. For example, Gala has requested "attorneys' eyes only" protection for certain documents under the draft protective order. Drifter is concerned that such protection is unnecessary and will interfere with its counsels' ability to discuss the evidence with their client, prosecute the litigation, and weigh related settlement considerations. In addition, Gala has requested that a party who wishes to challenge an overbroad "confidentiality" or "attorneys' eyes only" designation must file a motion with the Court. Plaintiff's position is that, if meet and confer efforts are unsuccessful, the designating party should file a motion arguing that such protection is warranted. After all, it is the designating party's burden to establish that a document should be shielded from public disclosure, and requiring the challenging party to undergo the cost and expense of challenging protection is likely to encourage overly broad designations and decrease the likelihood of negotiated resolution. Plaintiff remains hopeful that the parties will be able to cooperate in working through these differences, and only raises these issues now because they may impact the case schedule proposed herein.

        Counterclaimant is promptly and cooperatively negotiating with Plaintiff concerning the protective order and ESI protocol. Because Plaintiff has already breached its contractual confidentiality obligations by unnecessarily attaching the entire Agreement to its public complaint, an appropriate confidentiality order is particularly important. Counterclaimant does not believe it is necessary to set forth its position on a draft that is in flux, unless and until the parties are unable to resolve their disagreements, which Counterclaimant hopes they will resolve.

(D)    The parties are in the process of negotiating a proposed protective order and an ESI agreement addressing, among other things, issues related to claims of privilege and protection of trial-preparation materials, including provisions providing for assertions of privilege after inadvertent production of protected materials under Federal Rule of Evidence 502.

(E)    At present, the parties do not request any changes to the limitations on discovery.

    (F)    The parties are in the process of negotiating a proposed protective order and an ESI agreement, and plan to submit these proposed agreements to the Court soon.

b.    When and to whom the plaintiff anticipates it may send interrogatories.

**Response**:

    Plaintiff served an initial set of discovery requests, including interrogatories, on Defendant on January 23, 2024. Plaintiff may serve additional discovery requests on Defendant in the coming months.

c.    When and to whom the defendant anticipates it may send interrogatories.

**Response**:

    Counterclaimant served an initial set of discovery requests, including interrogatories, on Plaintiff on February 1, 2024. Counterclaimant may serve additional discovery requests in the coming months.

d.    Of whom and by when the plaintiff anticipates taking oral depositions.

**Response**:

    Plaintiff's investigation continues and the individuals it may seek to depose will depend to some extent on its review of Defendant's pending document productions. Nevertheless, at present, Plaintiff anticipates that the individuals it may seek to depose include the following Gala officers/employees: (i) Salvador Delgado; (ii) Mark Skaggs; (iii) Blake Walker; (iv) Patrick Bergman; (v) Eric Schiermeyer; and (vi) Wright Thurston. Plaintiff will take these depositions as promptly as possible, but after written discovery has been provided and reviewed. Plaintiff will seek to find a convenient time and location for these depositions for all deponents and all counsel. These depositions will be completed before the proposed August 9, 2024 discovery cut-off date, unless that date is otherwise extended.

e.    Of whom and by when the defendant anticipates taking oral depositions.

**Response**:

    Counterclaimant's investigation continues, and the individuals it may seek

        to depose will depend on the course of investigation and discovery.  At present, Counterclaimant anticipates that it may seek to depose Drifter's current or former employees or agents, including: (i) Ray Davis; (ii) Kenneth Scott; (iii) Brian Murphy; (iv) Hunter Hudspeth; (v) Brian Morin; and (vi) Michael Hatley and any other author of the purported "reminder" notice under the parties' Agreement. Counterclaimant intends to take these depositions promptly, particularly on the spoliation issue, and may do so before document production.  In addition, to the extent that Plaintiff's trial counsel may have allegedly performed Plaintiff's obligations under the contract, Counterclaimant may bring a potential motion for relief arising from counsel's status as a material witness and/or deponent in this case.

f.     (i)     Specify the date experts for plaintiff (or party with the burden of proof on an issue) will be designated and their reports provided to the opposing party.

        **Response:**

        The parties have proposed a deadline of June 19, 2024 for disclosure of both parties' expert witnesses and opening expert reports, with rebuttal experts and reports due July 19, 2024.  *See* **Ex. A**.

    (ii)     Specify the date experts for defendant will be designated and their reports provided to the opposing party.

        **Response:**

        The parties have proposed a deadline of June 19, 2024 for disclosure of both parties' expert witnesses and opening expert reports, with rebuttal experts and reports due July 19, 2024.  *See* **Ex. A**.

g.     List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion dates. See Rule 26(a)(2)(B) (expert report).

**Response:**

        Plaintiff anticipates taking the deposition of any expert designated by Defendant on or before August 9, 2024, the parties' proposed deadline for the close of discovery.  *See* **Ex. A**.

h.     List expert depositions the defendant (or opposing party) anticipates

11

        taking and their anticipated completion dates.  See Rule 26(a)(2)(B) (expert report).

**Response:**

        Counterclaimant anticipates taking the deposition of any expert designated by Plaintiff on or before August 9, 2024, the parties' proposed deadline for the close of discovery, unless that date is extended.  *See* **Ex. A**.

i. Indicate whether the parties have conferred with their clients regarding obligations concerning electronically stored information. Also identify limitations on discovery of electronically stored information, as contemplated by Federal Rule of Civil Procedure 26(b)(2)(B) and the Local Rules of this Court.

    **Response:**

        Both parties have conferred with their clients regarding obligations concerning electronically stored information ("ESI").  In addition, the parties are in the process of negotiating an agreement governing discovery of ESI, which includes a number of provisions aimed at simplifying and streamlining such discovery—including provisions related to deduplication of documents, threading of e-mails, limitations on disclosure of certain expert witness drafts and communications, and cutoff dates for privilege logs.

j. Discuss the scope and limits of planned discovery.  Identify how the parties will ensure that anticipated discovery will be proportional to the needs of the case, and address each of those considerations set forth in Rule 26(b) regarding the scope of discovery in general.

    **Response:**

        In addition to the pending ESI agreement discussed above, the parties have committed to cooperate as discovery progresses to ensure that discovery remains proportional to the needs of the case based on the factors set forth in Rule 26(b), including the importance of the discovery in resolving the issues, the amount in controversy, and whether the burden or expense of proposed discovery outweighs its likely benefit.

13. If the parties have not agreed on a part of the discovery plan, describe the separate views and proposals of each party.

**Response**:

    The parties have generally agreed on all parts of the discovery plan. Plaintiff proposes that, for purposes of expediency, the parties should endeavor to group depositions so that multiple depositions of the parties' employees or agents can be taken in a single setting. Counterclaimant supports the concept of grouping depositions of multiple employees to the extent reasonably practical, but submits that more than one geographic setting may be necessary to the extent that deponents reside in different places.

14. Specify the discovery beyond initial disclosures that has been undertaken to date.

    **Response**:

        The parties have not completed any discovery beyond initial disclosures, though Plaintiff has made a limited initial production of documents, including copies of the alleged Console Game. Counterclaimant is investigating whether the produced copy is the same version of the game that was allegedly delivered. Both parties intend to make additional productions of certain key documents after a proposed protective order is agreed upon and entered, and both parties have served an initial set of discovery requests.

15. State the date the parties believe planned discovery can reasonably be completed.

    **Response**:

        The parties have proposed a deadline of August 9, 2024 for the close of discovery. *See* **Ex. A**.

16. Describe the possibilities for a prompt settlement or resolution of the case that were discussed during your Rule 26(f) meeting.

    **Response**:

        The parties discussed the prospects for settlement or an early mediation, and conversations among counsel regarding a potential settlement are ongoing.

17. Describe what each party has done or agreed to do to bring about a prompt resolution.

    **Response**:

        The parties have agreed to cooperate on discovery, the scheduling of depositions, and a proposed case schedule. *See* **Ex. A**. In addition, the parties are in the process of negotiating a proposed protective order and an agreement governing discovery of ESI,

13

which include a number of provisions aimed at simplifying and streamlining such discovery.

18. From the attorneys' discussions with the client(s), state the alternative dispute resolution techniques that may be reasonably suitable.

    **Response**:

    At this time, the parties believe that a mediation may be the most reasonably suitable alternative dispute resolution technique to reach a potential resolution of this matter.

19. State whether a jury demand has been made and if it was made on time.

    **Response**:

    Plaintiff timely filed and served a jury demand on November 16, 2023 (Dkt. No. 21). This demand was made well before the deadline set forth Rule 38, which requires that a written demand be served "no later than 14 days after the last pleading directed to the issue is served." The last pleadings in this case—Drifter's answer to Gala's counterclaims (Dkt. No. 26) and Gala's amended answer (Dkt. No. 27)—were not served until December 4, 2023.

20. Specify the number of hours it is expected that it will take to present the evidence in this case.

    **Response**:

    At present, the parties estimate that it likely will take approximately 55 hours to present the evidence in this case. This estimate may change as discovery proceeds and based on the outcome of any dispositive motions.

21. List pending motions that could be ruled on at the Initial Pretrial Conference.

    **Response**:

    There are no pending motions at this time.

22. List other pending motions, if any.

    **Response**:

    There are no pending motions at this time.

23. Indicate other matters peculiar or unique to this case, including discovery, that deserve the special attention of the Court at the Initial Pretrial Conference.

**Response:**

   The parties have not identified any matters peculiar or unique to this case that deserve the special attention of the Court at this time.

24. Indicate whether the parties anticipate any amendments to the pleadings.

    **Response:**

    The parties are analyzing whether any amendments to the pleadings are needed at this time. The parties have proposed a deadline of March 15, 2024 as the last day to move to amend the pleadings. *See* **Ex. A**.

25. List the names, bar numbers, addresses, email addresses, and telephone numbers for all counsel. List the names, addresses, email addresses and telephone numbers for all parties and unrepresented *pro se* litigants.

    **Response:**

    The names, bar numbers, addresses, email addresses, and telephone numbers for all counsel are included below and in response to Question No. 1 above.

    Plaintiff's contact information is:

    Drifter Entertainment, Inc.
    Attn: Ray Davis
    11335 NE 122nd, Suite 105
    Kirkland, WA 98034
    Telephone: (919) 995-0276
    ray@drifter.games

    Counterclaimant's contact information is:

    Blockchain Game Partners, Inc.
    Attn: Legal Department
    1309 Coffeen Avenue, Ste. 11110
    Sheridan, WY 82801
    legal@gala.games

By:   */s/ Michael P. Hatley*
    Kim D. Cannon, WY Bar No. 5-1401
    Cole L. Gustafson, WY Bar No. 7-6070
    Davis and Cannon, LLP
    40 South Main Street
    P.O. Box 728
    Sheridan, WY 82801
    Telephone: (307) 672-7491
    Facsimile: (307) 672-8955
    cannon@davisandcannon.com
    cole@davisandcannon.com

    Michael P. Hatley
    *Admitted Pro Hac Vice*
    McNaul Ebel Nawrot & Helgren PLLC
    600 University Street, Suite 2700
    Seattle, WA 98101
    Telephone: (206) 467-1816
    Facsimile: (206) 624-5128
    mhatley@mcnaul.com

*Attorneys for Plaintiff Drifter Entertainment, Inc.*

By:   */s/ John W. Graham*
    John W. Graham, WY Bar No. 7-5742
    Geittmann Larson Swift LLP
    East Pearl Street, Suite 200
    P.O. Box 1226
    Jackson, WY 83001
    Telephone: (307) 733-3923
    Facsimile: (307) 733-3947
    jwg@glsllp.com

    Yoni Rosenzweig
    *Admitted Pro Hac Vice*
    Davis Wright Tremaine LLP
    868 South Figueroa Street, Suite 2400
    Los Angeles, CA 90017
    Telephone: (213) 633-6800
    Facsimile: (213) 633-6899
    yonirosenzweig@dwt.com

    Raphael Holoszyc-Pimentel
    *Admitted Pro Hac Vice*
    Davis Wright Tremaine LLP
    1251 Avenue of the Americas, 21st Floor
    New York, NY 10020
    Telephone: (212) 489-8230
    Facsimile: (212) 489-8340
    rhp@dwt.com

*Attorneys for Defendant and Counterclaimant Blockchain Game Partners, Inc.*

# EXHIBIT A

## Proposed Case Schedule

The Parties propose the following case schedule, subject to the Court's availability and approval:

| Deadline: | Proposed Date: |
|---|---|
| Last day to move to amend the pleadings and/or join parties: | March 15, 2024 |
| Disclosure of expert witnesses and opening expert reports: | June 19, 2024 |
| Disclosure of rebuttal expert witnesses and rebuttal expert reports: | July 19, 2024 |
| Close of discovery: | August 9, 2024 |
| Last day to file *Daubert*/dispositive motions: | August 30, 2024 |
| Last day to file Proposed Final Pretrial Order, pretrial disclosures, and motions *in limine*: | October 18, 2021 |
| Final pre-trial conference: | November 15, 2024 |
| Trial: | December 2 – December 13, 2024 |

If the Court's docket does not enable the trial to occur in December 2024, then the Parties would propose adjusting these dates and continuing them to later dates.